## THE STATE v. ALLEN, Appellant.

### Division Two, May 19, 1903.

1. **Pleading Without Counsel:** HOW CURED. Whatever irregularity there may be in requiring an accused charged with a felony to·plead to the indictment without advising him that he had a right to demand counsel, and permitting him to plead guilty without counsel, may be cured by afterwards appointing well-known members of the bar to look after his rights, and, by permitting him, before any further step is taken in the case, to withdraw his plea of guilty and enter one of not guilty.

2. **Plea of Guilty:** SUBSEQUENT WITHDRAWAL: EVIDENCE AT TRIAL. It is not reversible error for ·the prosecuting attorney to offer in evidence a plea of guilty which the defendant on trial, before any counsel had been appointed to look after his rights, was permitted by the court to make, but which, after the appointment· of·counsel for him, he was permitted to withdraw, and plead not· guilty. The most that the court can do is to exclude the offer and rebuke the prosecuting attorney for alluding to it. Nor is it held that such

Vol 174 mo—44.

State v. Allen.

evidence is absolutely incompetent, although under the circumstances of this case it was properly excluded.

3. **Carnal Knowledge**: FEMALE UNDER FOURTEEN YEARS: RAPE. Carnal knowledge with a female under fourteen years of age, with or without force, or with or without her consent, is rape.

4. ————: REMARKS OF THE PROSECUTING ATTORNEY. There is a marked difference between strong denunciation which is justified by the evidence, and wholesale abuse of the defendant for which there is no evidence. And in this case it is held that the calling of the defendant "a brute" by the State's attorney, was not such abuse.

5. ————: PASSION. In view of the overwhelming evidence of defendant's guilt of forcibly ravishing a girl less than fourteen years old, it is held that there is no evidence of passion in a verdict of imprisonment for ninety-nine years.

Appeal from Miller Circuit Court.—*Hon. Jas. E. Hazell,*
Judge.

AFFIRMED.

*W. S. Pope, L. N. Musser* and *Jno. W. Moore* for appellant.

(1) We concede now, as we did on the trial, that defendant is guilty of an aggravated assault for which no excuse can be offered. We believe that he was under the influence of drink when he committed the assault, but that does not excuse. With the excitement following the assault, the multiplied stories circulated and being forced by the situation (there was actual danger of a mob) to proceed to trial without a single day's delay, we were not surprised that under all the circumstances, the verdict of the jury was for so severe a penalty. We thought then, and think now, that the excitement of the hour is past, that the verdict was wrong, and that manifest error was committed on the trial, and so have at considerable expense and loss of time concluded we ought to present this appeal to this court, which we now do. (2) It will be seen by the court record copied in the abstract that the assault was committed Friday night, September 14, 1900. The grand jury was impaneled Monday evening, the 17th, and the indictment

presented the 18th; on the same day, without a moment's delay, the defendant is brought into court, an ignorant boy, not knowing his legal rights and without a friend to advise, without having been served with a copy of the indictment or knowing its contents or purport. Without a single suggestion to him that he has a right to demand counsel or to have their advice, he is called to answer to the indictment, and is permitted under such circumstances to enter a plea of guilty. We respectfully submit that the Bill of Rights of the Constitution of this State as well as of the United States were ignored and set aside by the trial court. R. S. 1899, sec. 2560; Const., art. 2, sec. 22. How could the defendant request the appointment of counsel when not informed of his rights or asked if he had an attorney or desired to consult one? True, the court afterwards on reflection, did appoint enough attorneys to help in the defense, but the record was there; it was a public record known to all. The offer of the prosecuting attorney to read that record to the jury, and the remarks of the court in the presence of the jury, on that offer, made a conviction of the extreme charge a sure thing in spite of any defense afterwards made by the attorneys, who, after being appointed and hastily investigating the facts, became convinced that defendant was only guilty of an aggravated assault. Such error ought to reverse this case. (3) The language of the assistant prosecuting attorney to the jury, unrebuked and persisted in, is so palpably and grossly error that under the uniform decisions of this court the case should be reversed. State v. Fisher, 124 Mo. 464; State v. Jackson, 95 Mo. 623; State v. Young, 99 Mo. 683. The remark of the court "To keep within the testimony," did not cure the error. There was no reprimand and the opprobrious epithets were reiterated. State v. Bobbst, 131 Mo. 338. The authorities to which we refer as bearing upon this case, especially the admissions of defendant, are: 1 Greenleaf, secs. 200 and 214; State v. Moxley, 102 Mo. 390;

State v. Glahn, 97 Mo. 693; State v. Walker, 98 Mo. 95.

GANTT, P. J.—At the September term, 1900, of the circuit court of Miller county, the defendant was indicted for rape.

The indictment contains two counts, one the ordinary form for rape upon a woman, and the other charges a rape upon the same female, alleging that she was a female child under the age of fourteen years.

The record discloses that the defendant, being under arrest, was brought into open court on the 18th day of September, and it being demanded of him how he would acquit himself of the charges in said indictment preferred against him, for plea thereto said he was guilty as therein charged.

Afterwards on the same day, the record recites: "The defendant herein being a poor man and unable to procure counsel for himself, the court appoints" four attorneys, naming them, as counsel for defendant. On the same day defendant in his own proper person and by his said counsel, by leave of the court withdrew his plea of guilty and entered a plea of not guilty to the indictment. On the next day a jury was duly impaneled and the evidence began. On the 21st day of September, 1900, the jury returned a verdict of guilty and assessed defendant's punishment at a term in the penitentiary for ninety-nine years. From this sentence on this verdict the defendant prosecutes this appeal.

The evidence tends to prove that at the time of the commission of the alleged offense, the defendant, a negro boy, was between eighteen and nineteen years of age. On the 14th day of September, 1900, there was a picnic at the town of Iberia, in Miller county. It began on Friday. On that evening there was a large concourse of people on the grounds. Among others at the picnic were two girls, the prosecuting witness, who was thirteen years old the previous February, and her niece, who was

about fifteen and somewhat larger. They were at the picnic from sundown until nine or ten o'clock that night. The prosecutrix lived about one-fourth of a mile from the picnic grounds. She and her niece started home with Mr. Benage and wife. After they left them they started across a field to the home of the prosecutrix, distant about an eighth of a mile. As the two young girls walked across this field side by side, they were suddenly seized from the rear. Ollie, the elder, broke loose and ran, but her assailant held Myrtle, the prosecutrix, and choked her and picked her up and carried her about 100 yards, and then she lost consciousness. She identified the defendant as the negro who followed them and who took hold of her.

When she recovered consciousness she was in great pain—says she "hurt all over." She found herself on the ground and the defendant by her with his pants open in front, but she could not remember what else was done by defendant. Ollie, on breaking loose from defendant, ran immediately to her grandfather's, the father of the prosecutrix, and gave the alarm. She testified that when defendant came up to them he said "he wanted our company awhile."

When she reached home her grandfather was in bed, and she told him a negro had grabbed Myrtle and run off with her. He jumped up and ran by Mrs. Gardner's, and aroused them. Mrs. Gardner and the father heard Myrtle groaning and some one running, and went to her. When her father reached her, she exclaimed, "Oh, Pa, why didn't you come sooner, that negro was choking me to death." She was lying on the plowed ground. Her clothing was very dirty and her dress was ruined. There was every evidence of a struggle on the ground. Mrs. Gardner testified the girl's underclothing was torn off of her, and terribly soiled, and bloody; her privates lacerated and bleeding. She was in a state of collapse when she reached her.

They took her to her father's house at once, and sent for a physician. Her neck was scratched and bruised. The physician testified· when he reached her she was cold and pale; her pulse was weak and fast; respiration irregular. She was prostrated.

On examination of her privates he found a laceration of the hymen at the lower border. This had been recently done, as there was hemorrhage still oozing out of the torn hymen when he examined her. There were indications of penetration.

G. B. Johnson testified to a conversation with defendant in which the defendant said he and another negro made it up that they wanted "to try a project." He "made a run when they got pretty close to the girls," but his partner dropped back and he didn't see him any more. He said, "I heard since he made a failure, but I didn't." Johnson said to him, "You went through with your intentions?" "Well, yes." Asked if the girl fought any, he said, Yes, "she kicked and scratched around right smart." Asked if he choked her he said, "I don't recollect; I don't think I hurt her." "Of course I tried to keep her from hollowing." He said a scratch on his chin was done by her. Mr. Musser, a member of the bar, heard this statement. After Mr. Musser told him that "if the girl swears to what they say she will, your neck will be the penalty," he said he "didn't do anything." On cross-examination this witness stated that "toward the last of his statement defendant said he didn't hold her down very long. He said he scuffled around with· her awhile and just got up and walked off."

Everett Brumley testified to a conversation of defendant with Jap Cooper in which defendant said he and his brother were drinking some lemonade ·at the picnic and Walter Lollis, another negro, came and called him aside and said, "Don't you want to have some sport to-night?" and defendant answered, "Any old thing." He then said: "We started just about the

time those girls were ready to start home, and we followed them down to where I took hold of them,'' and then he said, ''I never seen no more of the other darkey, he was gone.'' Jap says, ''You had been watching those girls, hadn't you that evening?'' ''Yes,'' he said, ''I had.'' Witness said to him, ''You did what you intended to do when you started down there?'' and he answered, ''I did.''

The prosecuting attorney then called the clerk of the court and had him sworn. After this witness was sworn the prosecuting attorney stated to the court, ''We desire to introduce the record of this plea of guilty in this case, your honor.'' Counsel for defendant then said, ''I want to except to the language of the prosecuting attorney before the jury.''

''The Court: Well, you save your exceptions. He first intimated rather that he wanted to plead guilty, but seemed to be some doubt in his mind. After he stated that, the court had the plea entered, and we appointed these attorneys to look after his case, and after he talked to them he concluded he wanted to withdraw that plea of guilty. It is withdrawn without any prejudice. The prosecution should not have mentioned it at all. It might become a serious point in an appellate court.''

Counsel for defendant then saved an exception to the language of the court.

On the part of defendant the evidence tended to prove the defendant was eighteen years old in March, 1900, at his last birthday before the trial. That the defendant bore a good reputation for honesty and good citizenship prior to this charge.

Mr. Musser testified to the conversation Mr. Johnson detailed. His recollection was distinct that the defendant said he didn't have intercourse with the girl. He didn't think he had been with her more than two minutes; that he got scared at her hollowing and he let her lay and ran off. He said he didn't have his pants

open. He said all he recollected he did was that he caught her and threw her down on the ground. If he choked her he didn't know it. He didn't think he had. Asked if she hollowed, he said, "Yes, I think I put my hand over her mouth to keep her from hollowing." He said he placed his hands on her private parts. Witness stated Mr. Johnson had been talking to defendant before he came up to them.

The defendant testified in his own behalf. He denied having connection with the prosecutrix. "All I did do was I just caught her and throwed her down and I closed up her mouth with one hand and raised her dress with the other hand. Of course she got to struggling and hollowing. I come to think of myself and I got scared and ran away. I never come to unbutton my pants nor nothing that way."

Various errors are assigned by counsel for defendant to reverse the judgment of the circuit court.

I. The proposition most earnestly urged is that the court erred in requiring defendant to plead to the indictment without advising him that he had a right to demand counsel or have their advice and in permitting him to enter a plea of guilty.

Whatever irregularity there was in arraigning defendant and receiving his plea of guilty was obviated on the same day and before any other step was required to be taken, by the appointment of four well-known members of the bar, and by permitting the withdrawal of his plea of guilty and entering one of "not guilty." So that the defendant had the full benefit of counsel which the statute guaranteed to him (sec. 2560, R. S. 1899) and of his plea of not guilty.

In connection with this point is the further assignment that error was committed by the prosecuting attorney in offering the record of this plea of guilty and the remarks of the court in excluding it. It will be observed that the court not only refused to admit it but rebuked counsel for alluding to it.

State v. Allen.

It is assumed as a predicate that the plea of guilty was absolutely incompetent, but no authority or reason is given for such a position.

It is not pretended that this plea was entered under any agreement or belief that the defendant should receive a lighter punishment, nor that it was made under any mistake or promise of leniency. That it would have been competent to show that it was made without advice of counsel and had been withdrawn by consent of the court, if it had been admitted, there can be no doubt, nor is there any question that the court in its discretion wisely excluded it in the circumstances, but that it was absolutely incompetent we are not prepared to hold.

But conceding it was incompetent, it would be going too far to say that it is reversible error merely for counsel to offer incompetent evidence. To so hold would require two-thirds of the cases appealed to be reversed. This evidence was excluded and the counsel rebuked for alluding to it. Surely the court could have done no more.

Moreover, a careful consideration of the court's ruling shows that the learned judge advised the jury that the plea was withdrawn without prejudice and that the defendant was in doubt when he made it. In view of all the facts we are clear that the judgment ought not to be reversed on this account.

II.   There was no error in the second instruction. It simply told the jury that if they found the defendant had carnal knowledge of the prosecutrix and she was at the time a female child under the age of fourteen years, he was guilty of rape, whether such carnal knowledge was accomplished with or without force, and with or without her consent. This is well-settled law in this State. [State v. Houx, 109 Mo. 661; State v. Lacey, 111 Mo. 513; State v. Hamey, 168 Mo. 199, and cases cited.]

Neither is it in conflict with the thirteenth instruction which defined the word "ravish." That word was properly defined and had only been used in the twelfth instruction in stating the law as to an assault with intent to commit a rape. Equally without merit is the objection to the third instruction.

There is no conflict whatever between the third and fourth instructions. The fourth required proof of actual penetration and the third defined what constituted penetration in the meaning of the law. They are entirely harmonious.

The court instructed upon all the law arising in the case, necessary for the information of the jury.

III. The third proposition is that this judgment must be reversed because of the remarks of the associate counsel for the State. In the course of his remarks the counsel referred to the defendant as a brute. He was admonished by the court to call him "the defendant" when he had occasion to mention him. We are referred to cases in which we have condemned the practice of abusing a defendant.

We adhere to all we have said in those cases, but we think there is a marked difference between strong denunciation which is justified by the evidence and wholesale abuse for which there is no justification.

The counsel did use language which might well have been much more moderate and far more effectual, but in referring to the defendant's conduct as brutal, and the defendant as a brute, he was justified by the evidence in the case.

If the defendant's own evidence in this case, detailing how he and his confederate deliberately selected two innocent young girls, the eldest not fifteen years old, as victims of their lust, and how they watched them start from the picnic grounds unprotected and followed them until they were entirely alone and then rushed upon them and seized them, and how he had placed his hand over the mouth of the prosecutrix to prevent her giving

the alarm and how he then and there violated her person, does not stamp him as a brute, then the word has lost its old significance.

The attorney's argument was that one whose conduct had shown him to be so pitiless and so lost to every principle of manhood that the helplessness of the innocent and unprotected child in no way appealed to him, was a brute, and so much of his testimony as denied the accomplishment of his purpose ought not to be believed by the jury. In view of the overwhelming evidence in this case, supplemented by the defendant's own testimony, we find no evidence of passion in the verdict of the jury.

We are unable to accede to the proposition of the able counsel, who have so faithfully defended the prisoner without fee or reward, that the evidence discloses merely a case of an aggravated assault, and not the completed offense of rape. We think the evidence fully sustains the verdict and that no less punishment would have properly responded to the proofs. In view of the overwhelming evidence, we are of opinion that the remarks of the counsel of themselves ought not to work a reversal of the judgment, and it is accordingly affirmed. All concur.