## STATE *versus* AMELIA O'CONNER.

On the trial of an indictment against a person as a common seller of intoxicating liquor, the instruction to the jury, "that under our present statutes, no particular number of sales are necessary to be proved to constitute a common seller, but that the jury must be satisfied, from the evidence, that selling intoxicating liquors was her common and ordinary business, and they might be authorized to find the respondent guilty without proof of any particular number of sales," is sufficiently favorable for the respondent.

ON EXCEPTIONS, from *Nisi Prius*, RICE, J., presiding.

THIS was an indictment against the respondent under the statute of 1858, as a common seller of intoxicating liquors.

The testimony offered by the government tended to prove more than six distinct sales of intoxicating liquors by the respondent.

The presiding Judge instructed the jury, that under our

present statutes, no particular number of sales was necessary to be proved to constitute a common seller; but that the jury must be satisfied, from the evidence, that selling intoxicating liquors was her common and ordinary business, and they might be authorized to find the respondent guilty without proof of any particular number of sales.

The verdict being against the respondent, she excepted.

*Hunter & Clay*, for the respondent.

In this case, the instruction of the presiding Judge was manifestly wrong. The law of 1858, for the suppression of drinking houses and tippling shops, does not define what constitutes a common seller of intoxicating liquors. The words "common seller," like those of "common barrator," are a term of art appropriated by the law; and we must have recourse to the common law to determine in what the offence consists.

Common seller is analagous to common barrator, and it is well settled that, at least, three instances of offending must be shown, within the time covered by the indictment, to prove the offence of barratry. Bishop on Criminal Law, § 59, vol. 2; *Commonwealth* v. *McCulloch*, 15 Mass., 227; *Commonwealth* v. *Davis*, 11 Pick., 432, 435; *Commonwealth* v. *Tubbs*, 1 Cush., 2, 3. The case of the Barrators, 8 Rep., 36; *State* v. *Day*, 37 Maine, 244.

Under this instruction the jury would have been authorized to find the respondent guilty without proof of three sales. A defendant might be shown to have a place fitted up for a bar for the sale of liquors, (as in Tubbs' case, 1 Cush., 2,) and to be ready there, by himself or his agent, to sell liquor, and, in fact, to have sold to one person or more, and a jury, with instructions like those given in this case, might be justified in finding a verdict of guilty, although the law has been distinctly laid down in *Commonwealth* v. *Tubbs*, already cited, that, though facts like the above "are proper to be submitted to the jury as evidence of three distinct sales," yet, "it must be proved that the

defendant made three or more distinct sales of spirituous liquors" in order to be convicted as a common seller.

The Judge should have instructed the jury that three distinct sales, at least, in connection with other evidence, were necessary to be shown in order to find the defendant guilty as a common seller. Bishop on Crim. Law, § 995, vol. 2.

*Drummond, Attorney General,* for the State.

The instruction complained of was more favorable to the defence than the law warrants.

A person may be presumed to be a common seller by proof of three sales, but the sales do not constitute the crime; *they are only evidence of it.*

The case cited by the counsel for the respondent, from 1 Cushing, was decided under a statute which defines the crime in such a manner as to make it necessary to prove three sales, or their equivalent, in order to procure a conviction.

The opinion of the Court was drawn up by

RICE, J.—Section 8, c. 33, laws of 1858, provides that no person shall be a common seller of intoxicating liquors. This statute does not define what acts shall constitute the offence.

The Act of 1856, c. 255, § 14, defined a common seller to be any person against whom three unlawful sales of intoxicating liquors should be proved within the time laid in the indictment therefor; or any person who should have been twice convicted of unlawful sales of intoxicating liquors against the provisions of the Act, and who should commit a third offence against the same, within six months subsequent to the last of such convictions.

Section 23, of the same Act, provided that any person who, at one term of the appellate Court, should be convicted in three appealed cases, should also be deemed a common seller.

Chapter 211 of the laws of 1851, § 13, provided, in case

of seizure, that when the quantity of liquors seized should exceed four gallons, if the final decision should be against the appellant, that the liquors were intended by him for sale, he should be adjudged a common seller of intoxicating liquors.

These several statutory provisions, defining the offence of common seller, have been repealed by subsequent legislation. They were all arbitrary provisions, based upon no principle, and in palpable violation of the well established meaning of terms. To punish a person for the acts described in those provisions was one thing, and perhaps well enough ; but to say that such acts necessarily constituted the persons guilty thereof "common sellers," was a misapplication of terms — an assault upon the integrity of the English language.

The courts in Massachusetts have attempted to define the term "common seller" with little better success. In *Commonwealth* v. *Odlein*, 23 Pick., 275, that learned Court decided that three sales to one person ought to have the same effect as the same number of sales to three different persons. They also well remark, that, "in either case, as no statute and no rule of common law has precisely determined what shall constitute a common seller, the evidence should be left to the jury, with any circumstances tending to support or rebut the inference arising from such evidence."

In *Com.* v. *Tubbs*, 1 Cush., 2, the Court held that three distinct acts of sale are necessary to constitute a common seller. Such, they remark, has been the general rule as to a common barrator and other cases of this nature. In that case, the jury were instructed that one sale, acccompanied with other circumstances of preparation for selling and readiness to sell, stated in the instructions, would be sufficient to constitute the defendant a common seller. The Court held this to be erroneous, and properly, because the circumstances referred to were facts only tending to prove that he was a common seller, but not in themselves conclusively proving that fact. The Court were of the opinion that the circumstances referred to tended to prove three

sales, and pretty clearly indicate the opinion that the three sales would constitute the principal offence. This, however, does not follow, upon any established rule or principle of law. Three sales may be conclusively proved and still the person making them not be a common seller.

In the case of *Com.* v. *Perley*, 2 Cush., 559, the Court decide that all the sales necessary to constitute a common seller may be made in one day.

In this State the Court has not attempted to define in terms the offence of "common seller" of intoxicating liquors.

In the case at bar, the evidence tended to prove more than six distinct acts of sale of intoxicating liquors by the defendant, and the Court instructed the jury that, "under our present statute, no particular number of sales were necessary to be proved to convict a common seller, but that the jury must be satisfied from the evidence that selling intoxicating liquors was her common and ordinary business."

It has already been remarked that the various statute definitions of a common seller have been repealed. In view of this fact, can the ruling be erroneous? It is so contended; and that the term common seller, like common barrator, is a term of art, and requires that at least three distinct instances of offending must be shown within the period of time covered by the indictment. To this it is sufficient to remark that "common seller" is not a term of art, and is not defined either by statute or by common law. *Com.* v. *Odlin*, 23 Pick., 275. Its definition must therefore be sought from the same sources that we seek the meaning of other words or phrases in our language which are in common use.

COMMON, as defined by Worcester, means *frequent, usual, customary, habitual.* A common seller, therefore, is one who sells frequently, usually, customarily, habitually. But this is not all. The jury were required to find from the evidence that the defendant made the sale of intoxicating liquors not only her common but also her ordinary business. ORDINARY, as defined by the same lexicographer, means *es-*

*tablished, settled, accustomed, conforming to general order.*
And yet it is said, that this instruction, thus comprehensive
and guarded, is too hard upon the defendant. The fault, if
any it have, is the other way. This will be manifest from
a moment's consideration.

There are many offences recognized by statute and by
common law bearing strong analogy to this; such as com-
mon barrator, common scold, common drunkard, fiddler,
piper, night walker, evesdropper, and the like.

The evidence by which these and kindred offences are es-
tablished arises according to the peculiar characteristics of
the offence itself. In some, the evidence must necessarily
be positive, in others, principally circumstantial, and in oth-
ers, mixed. There is no cabalistic rule of *three* which can
be invoked as matter of demonstration in all or even any of
these cases. Take the case of a common barrator, the only
case in which the books have indicated any particular num-
ber of individual acts necessary to constitute the offence.
But in relation to this offence, "the books," say the Court in
*Com.* v. *McCulloch,* 15 Mass., 227, "seem less explicit than
we had thought." No one can be convicted as a common bar-
rator in relation to one offence only — it must be in relation
to many cases. 8 Coke's R., b. 37. This arises from the
very nature and definition of the offence, which consists in
*frequently* exciting and stirring up suits and quarrels either
at law or otherwise. The proof, too, must necessarily be
positive in its character, as it has few or no surrounding
circumstances to indicate its existence — no implements of
trade — no distinctive ear marks.

So of a common scold. The law prescribes no particular
number of acts of scolding, or proof of particular words or
expressions used to constitute the offence; it is sufficient to
prove that she is always scolding. 1 Russ., 327.

What would be said of the proposition to convict a woman
as a common scold who had scolded three times; or a per-
son as a common fiddler who had fiddled three times, or as
a common piper, for piping three times?

Would a person be deemed a common drunkard who

should be proved to have been intoxicated three times within a given period, while one who should be proved to have been commonly and ordinarily drunk during the same period, would not be deemed guilty? No, the fundamental idea attached to *common*, as applied to these acts, is that they are constantly, continually occurring, and not individual, isolated cases.

But the case at bar is more strongly analogous, especially as to the evidence by which it is to be sustained, to other cases of the same general class. Such is the case of a common bawdy house, where it is unnecessary to prove particular acts of illicit sexual intercourse, or even what particular persons visit the house, but if unknown persons are proved to have been there, conducting themselves in a disorderly manner, it will maintain the indictment. Ros. Cr. Ev., 744; 1 Russ., 323. Or, a common gaming house, where idle and evil disposed persons come unlawfully to play together, &c. 1 Russ., 323. Or, of being a common innholder or common victualler, which facts may be established by proof of opening a house and hanging out a sign, &c. 3 Bl., 166. These, and cases of a similar character, afford circumstantial evidence of their existence, not less satisfactory than the most positive proof. The same is emphatically true of common sellers of intoxicating liquors.

The witnesses, under the rule requiring positive proof of three distinct sales, must almost of necessity be the customers, and are generally the victims of the sellers. Who that has had any considerable experience in the trial of these cases has not been pained and mortified at the melancholy exhibition of human nature, when the buyer and seller, the victim and the victimizer, have been brought face to face in Court; the one as the witness, the other as the accused? To what pitiful evasions, self stultification and downright perjury will not such witnesses frequently resort, when thus under the eye of the persons who have pandered to their morbid but depraved appetites! *It is the most fruitful source of perjury in our Courts.*

Yet under the rule requiring positive proof of three sales

State *v.* O'Conner.

to convict, this class of witnesses must necessarily be principally relied upon, as the shops of liquor sellers are not frequented except by their customers.

Courts do not enforce such narrow technical rules in other cases. Criminals, from the murderer to the keeper of the bawdy house, may be convicted on circumstantial evidence. But, under this rule, the dealer in intoxicating liquors may have a shop filled with barrels and casks of liquor, exposed for sale ; his counter may be supplied with all the appliances for the traffic ; he may advertise his business in the public journals ; the sound of drunken revelry may go up during the hours of night from his place of business ; crowds of trembling inebriates may press around his doors, and staggering drunkards be ejected therefrom, and all these facts and circumstances be seen and known of the police or other sober and reliable citizens, and yet the keeper of such a shop go with impunity, unless some sober citizen can, or some drunken victim will testify to three distinct acts of sale ! A rule so purely technical and arbitrary cannot commend itself to our common sense. It is also at variance with analogies of the law, and, in our judgment, tends to evil. Distinct acts of sale undoubtedly tend to show that the person making them is a common seller. The more frequent those acts the stronger is that tendency. Other facts and circumstances have also the same tendency, and are frequently more satisfactory in their character. These distinct acts, when proved, and other facts and circumstances tending to show the character of the business of the accused, should all be presented to the jury, and, from the whole testimony they should determine whether the offence has been committed. Deeming the instructions correct in principle, and certainly sufficiently favorable for the defendant, the *exceptions are overruled.*

TENNEY, C. J., GOODENOW, DAVIS and KENT, JJ., concurred.