THE STATE v. SAMUEL SHERMAN, *alias* JOHN COLLINS, Appellant.

Division Two, March 30, 1915.

1. JURORS: Conscientious Scruples Against Death Penalty. The trial court does not err, in excusing from the array jurors otherwise qualified who state upon their *voir dire* examination that they have conscientious scruples against finding a defendant guilty of an offense punishable with death.

2. ————: Newspaper Opinions. Jurors who state upon their *voir dire* examination that they have formed opinions in regard to the case from having read newspaper reports, but that they will not be influenced by them in finding a verdict according to the law and the evidence, are not disqualified.

3. GENERAL OBJECTION: Equivalent to No Objection. An objection to proffered testimony that it is "incompetent, irrelevant and immaterial and that it tends to prove no issue in the case" will not suffice to support an exception to its admission, unless the testimony offered is inadmissible for any purpose.

4. IRRELEVANT TESTIMONY: Non-Prejudicial. Although testimony admitted is irrelevant and the time of the court is unnecessarily taken up in its introduction, yet if, upon a reasonable construction, it is not prejudicial, its admission will not constitute error.

5. ————: Murder: Unquestioned Guilt: Appellate Rule. In the presence of the unquestioned guilt of a defendant charged with first-degree murder, only errors which, upon a fair interpretation, tend to prevent an impartial trial, will work a reversal.

6. CROSS-EXAMINATION OF DEFENDANT: Presence in Neighborhood of Crime: Immaterial Matter. Where defendant has testified that he and his codefendant were in the neighborhood of the shooting the night the policeman was shot, and that they fled when they saw him coming out of a certain drug store, the State was authorized in asking defendant on cross-examination why he was in the neighborhood, and in eliciting or attempting to elicit from him all the facts relative to his presence at the place the homicide was committed at or about the time it was committed. It is not error to cross-examine a defendant concerning a matter referred to in his examination in chief; and even if not referred to in his examination in chief, if it be concerning a matter that is principally immaterial, his cross-examination in regard thereto is not prejudicial.

State v. Sherman.

7. **EVIDENCE OF OTHER CRIMES: Relevant Matter: Intent.** In making proof against a defendant in a criminal case, the prosecution may introduce in evidence all relevant facts and circumstances which tend to establish any of the constitutive elements of the crime for which he is on trial, although it may be developed by such evidence that he has committed other crimes; and evidence of the possession by him of lethal instruments with which the crime was committed may be admitted to show an intent or purpose to commit the crime with which he is charged, although such evidence may implicate him in another and different crime.

8. ————: ————: ————: **Carrying Concealed Weapons at Another Time and Place.** Where defendant while on the stand has admitted and his counsel in his opening statement has said that defendant "pulled his gun out of his pocket and started to hand it to the police officer" whom he is charged with having murdered, thereby confessing himself guilty of carrying concealed weapons, the admission of the testimony of certain witnesses that defendant and his co-indictee on the night of the homicide and prior thereto had pistols in their possession or were carrying concealed weapons, was not error, even though it tended to prove another and distinct crime.

9. **MURDER: Sufficiency of Evidence.** The evidence in this case, and in its companion case of State v. Tatman, *ante*, page 357, authorized a verdict of murder in the first degree.

10. **ARGUMENT OF PROSECUTOR: Extraneous Matters: Status of Public Mind.** Prosecuting attorneys should confine their arguments to the jury to a legitimate discussion of the facts developed at the trial and to the instructions. But that does not mean that they may not discuss the prevalence of crimes such as that for which defendant is on trial, or state their conclusions as to the state of the public mind in regard to crime generally or the particular class of offenses under consideration. The remark of the prosecuting attorney in his argument to the jury in a murder case that "the people of Jackson county do not believe in highwaymen, bullies or murderers," was but a statement of a truism, was not denunciation, and was not prejudicial.

Appeal from Jackson Criminal Court.—*Hon. E. E. Porterfield*, Judge.

AFFIRMED.

*O. F. Wimmer* and *L. N. Dempsey* for appellant.

(1)   The court refused to permit qualified 'jurors to serve, for the reason that they swore that they would not impose capital punishment, even though they would return a verdict of guilty, in violation of Sec. 4450, R. S. 1909.   (2)   Other crimes than the one charged. State v. Hyde, 234 Mo. 200; State v. Philips, 233 Mo. 299.   (3)   The court erred in giving the instruction on murder in the first degree, for the reason there is no evidence on which to base said instruction.   State v. May, 142 Mo. 135; State v. Gordon, 191 Mo. 227; State v. Eperly, 201 Mo. 572; State v. Walker, 196 Mo. 87; State v. Garrison, 147 Mo. 49.   Even though there had been evidence on which to base said instruction it erroneously declared the law, in that it did not require the jury to find from the evidence, beyond a reasonable doubt, the elements constituting murder in the first degree.   State v. Martin, 124 Mo. 522.   Said instruction was erroneous for the further reason that it referred the jury to instruction number 7, which instruction attempted to define self-defense and improperly defined the same.   Instruction number 7 is erroneous in that it required the jury to find that deceased was about to kill defendant or to do him some great bodily injury before the defendant had a right to shoot in his own defense.   State v. Edwards, 203 Mo. 540; State v. Garrett, 170 Mo. 397; State v. Reed, 154 Mo. 22; State v. Beaty, 190 Mo. 286; State v. Feeley, 194 Mo. 322.   The court erred in giving instruction number 10, for the reason, there was no evidence on which to base said instruction and for the reason said instruction did not require the jury to find that the defendant shot said Lynch with malice aforethought and for the reason that said instruction authorizes the jury to find the defendant guilty of murder in the first degree, regardless of what force or means said Lynch was using in making said arrest.   State v. Banks, 167 S. W. 505; State v. May, 142 Mo. 135.   (4)   The verdict is contrary to the evidence, for the reason that, under the

evidence, the defendant was entitled to be acquitted on the ground of self-defense, or if found guilty at all he could be found guilty only of murder in the second degree, as there was no element of deliberation in the case. State v. May, 142 Mo. 135. (5) The court erred in refusing to rebuke the prosecuting attorney for denouncing the defendant as a "highwayman" in his final argument to the jury. State v. James, 216 Mo. 394; State v. Newcomb, 220 Mo. 54; State v. Thavanat, 220 Mo. 545; State v. Claney, 225 Mo. 654; State v. Philips, 233 Mo. 299; State v. Farrel, 233 Mo. 452; State v. Hyde, 234 Mo. 200; State v. Miller, 234 Mo. 588; State v. McGrath, 128 S. W. 966.

John T. Barker, Attorney-General, and W. T. Rutherford, Assistant Attorney-General, for the State.

(1) Persons conscientiously opposed to the infliction of the death penalty in cases wherein such penalty is provided by law are not competent to sit as jurors. Sec. 5218, R. S. 1909; State v. Miller, 156 Mo. 84; State v. David, 131 Mo. 390; State v. Punshon, 133 Mo. 51; State v. Wooley, 215 Mo. 672. (2) Where a juror on his *voir dire* examination declares that his opinion is not such as to bias or prejudice his mind, and that his opinion will readily yield to the evidence in the case, he is a competent juror. State v. Church, 199 Mo. 629; State v. Darling, 199 Mo. 196; State v. Sykes, 191 Mo. 75; State v. Brennan, 164 Mo. 507; State v. Bronstine, 147 Mo. 520; State v. McGinnis, 158 Mo. 105. (3) If an officer suspects from his own knowledge of facts, or from facts communicated to him by others, that a felony has been committed and has reasonable ground to believe that the accused is guilty of the felony, he may arrest him. State v. Spaugh, 200 Mo. 604; State v. Cushinberry, 157 Mo. 181; State v. Craft, 164 Mo. 644; State v. Albright, 144 Mo. 653; State v. Fuller, 96 Mo. 168; State v. Evans, 161 Mo. 108; State v. Hol-

comb, 86 Mo. 381; State v. Dierberger, 96 Mo. 672; Anderson v. State, 133 Wis. 610. (4) The statement of appellant that on the night of the homicide he in company with his codefendant, whom he knew to be a "holdup" man, went to the place of the homicide to look over a drug store situated there, was competent evidence to show his business there, armed, and to show the deceased officer had reasonable cause, taken in connection with their actions there at that time and information he had of other crimes committed in that neighborhood by persons answering the description of appellant and the authority of the officer, to arrest him without a warrant. See cases under point 3. (5) A defendant on the witness stand may be cross-examined in detail as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case. Sec. 5242, R. S. 1909; State v. Larkin, 250 Mo. 234; State v. Miller, 156 Mo. 85; State v. Sharp, 233 Mo. 284; State v. Barrington, 198 Mo. 71; State v. Feeley, 194 Mo. 315; State v. Kyle, 177 Mo. 663; State v. Fisher, 162 Mo. 172; State v. Cunningham, 154 Mo. 174; State v. McLaughlin, 149 Mo. 29; State v. Punshon, 133 Mo. 54; State v. Eisenhour, 132 Mo. 148; State v. Harvey, 131 Mo. 345; State v. Kennade, 121 Mo. 413; State v. Avery, 113 Mo. 498; State v. McKenzie, 102 Mo. 632; State v. West, 95 Mo. 142; State v. Brannum, 95 Mo. 22; State v. Berning, 91 Mo. 85; State v. Taylor, 134 Mo. 156; State v. Miller, 190 Mo. 462; State v. Keener, 225 Mo. 499; State v. Donnington, 245 Mo. 354. (6) Evidence of other crimes committed by one on trial for homicide is admissible for the purpose of showing that the officer had reasonable grounds for attempting to make the arrest and for the purpose of showing a motive for the homicide. State v. Grant, 79 Mo. 136; State v. Rudolph, 187 Mo. 84; State v. Collins, 181 Mo. 259; White v. State, 70 Miss. 253; People v. Wilson, 141 N. Y. 185, 188; English v. State, 34 Tex. Crim. 190; State v.

Morgan, 22 Utah, 162; State v. Shaw, 73 Vt. 149; Dryer v. State, 139 Ala. 117; Com. v. Carter, 66 N. E. 716; People v. Coughlin, 13 Utah, 58; Williams v. Com., 85 Va. 607; Com. v. Major, 198 Pa. 200; People v. Pool, 27 Cal. 573; Anderson v. State, 133 Wis. 601; State v. Byrd, 72 S. C. 104; People v. Woods, 147 Cal. 265; Bishop v. Com., 109 Ky. 565.

WALKER, J.—Upon an information filed by the prosecuting attorney of Jackson county, appellant and John Tatman were charged with murder in the first degree in having shot and killed John Lynch, a police officer, in Kansas City in said county on the night of April 30, 1913. A severance was granted and a trial of appellant was had, resulting in a conviction as charged, the punishment being assessed at death. Following the usual procedure, an appeal was perfected to this court.

The facts are identical with those in State v. Tatman, *ante,* p. 357, except that appellant in his voluntary statement, made the morning succeeding the homicide, said that when he attempted to deliver his pistol to the officer the latter lunged forward and the pistol was discharged, whereupon the officer began shooting at appellant, when he returned the fire in self-defense. That he did not intend to shoot the officer in the first instance, but that the shot was accidental. That when appellant found Tatman, his codefendant, had been shot in the foot they made away as fast as they could and were apprehended a few blocks from the scene of the shooting by a police officer named Whalen.

I. *The Selection of the Jury.*—Appellant contends that the trial court erred in excusing from the array a number of otherwise qualified jurors who stated upon their *voir dire* examination that they had conscientious scruples against finding a defendant guilty of an offense punishable with death. The action of the trial

court was in compliance with the statute (Sec. 5218, R. S. 1909), which provides that persons having these scruples shall not be allowed or compelled to serve as jurors on the trial of an indictment for any offense punishable with death. The rule announced in this statute has received judicial approval without express reference thereto in State v. David, 131 Mo. l. c. 390. Nor did the court err in refusing to exclude from the trial panel two jurors who stated on their *voir dire* examination that they had formed opinions in regard to the case from having read newspaper reports but that this would not influence them in finding a verdict according to the law and the evidence. [State v. Church, 199 Mo. 605, 631; State v. Darling, 199 Mo. 168, 196.]

II. *Rulings on Evidence.*—Appellant contends that the court erred to his prejudice in the admission and exclusion of testimony. We have carefully reviewed the record and find that many of the objections made to the court's rulings were general, or that counsel for the appellant urged that the testimony objected to was "incompetent, irrelevant and immaterial and that it tended to prove no issue in the case." Objections of this character will not suffice for a basis for an exception unless the testimony offered is inadmissible for any purpose, and the testimony objected to was not of this class. [State v. Castleton, 255 Mo. 201.] Moreover, while much of the testimony complained of was irrelevant and the time of the trial court was unnecessarily taken up in its introduction, it was not, under a reasonable construction of same, prejudicial, and appellant's complaint in this regard is not well founded. In the presence of unquestioned guilt, only errors which, upon a fair interpretation, tend to prevent an impartial trial should be considered sufficient to work a reversal.

III. *Cross-examination of Appellant.*—Appellant contends that counsel for the State should not have been permitted to ask him why he was at the time out in the neighborhood where the shooting occurred, the objection being that appellant had not been examined in chief in regard to this matter. Appellant had, however, stated that he was in the neighborhood the night of the shooting with his codefendant, Tatman, and the appellant's testimony properly subjected his conduct to examination, especially as he had stated that he and Tatman had fled when they saw the police officer coming out of the drug store. The statute (Sec. 5242, R. S. 1909) subjects a defendant who testifies in his own behalf "to cross-examination, as to any matter referred to in his examination in chief," and he "may be contradicted or impeached as any other witness." Having stated that he was in the neighborhood, the State was authorized in eliciting or in attempting to elicit from him all the facts relative to his presence on the night and at the place where the crime was committed. As we said in State v. Miller, 156 Mo. l. c. 85, the cross-examination of a defendant in a criminal case is not confined to a mere categorical review of the matters stated in the direct examination. And in State v. Barrington, 198 Mo. l. c. 81, we said that to warrant a reversal on the ground of an improper cross-examination the statute must be given a reasonable construction and the cross-examination must be in regard to matters material to the cause concerning which the defendant did not refer in his examination in chief, or, if immaterial, it must be upon subjects tending to prejudice the jury against the defendant. These cases are authority for the further cross-examination of appellant as to his reason for having a pistol in his possession on the night of the crime. These facts, and others upon which he was cross-examined, had been referred to in his examination in chief, and hence the cross-examination was not erroneous, not only under

the express terms of the statute as construed in the cases referred to, but for the additional well founded reason which has received our approval in State v. Feeley, 194 Mo. l. c. 315, that a cross-examination such as this was not prejudicial to the defendant, in that the matter elicited is principally immaterial although not referred to in his examination in chief, and will not authorize a reversal of the judgment. The court says further in the Feeley case, supra, that the Legislature could not have intended, in passing the law limiting the right of the State to cross-examine the defendant, that its violation, in regard to immaterial matters not hurtful to the defendant, would suffice to work a reversal. The latitude allowed in cross-examination upon the varied phases presented by the cases reviewed has been exhaustively presented in the respondent's brief, q. v.

IV. *Evidence of Other Crimes.*—Certain witnesses testified that appellant and his codefendant on the night of the killing and prior thereto had revolvers in their possession, or were carrying concealed weapons. Appellant contends that the admission of this testimony was error, on the ground that it was evidence of another and a distinct crime, disconnected as to time and place, and having no connection with the crime charged, nor tending to prove the same. Appellant admitted on the stand that he "pulled his gun out of his pocket and started to hand it to the police officer," thereby confessing himself guilty of carrying concealed weapons. This statement was also made by counsel for appellant in his opening statement, in which he said that appellant would so testify. In the presence of these facts, the admission of the testimony in question having the same effect and a like probative force as the admission of appellant and the statement of his counsel, the former could have suffered no prejudice.

The general rule is that in making proof against a defendant in a criminal case, the prosecution may introduce in evidence all relevant facts and circumstances which tend to establish any of the constitutive elements of the crime for which the defendant is on trial, although it may be developed by such evidence that he has committed other crimes; but proof of other crimes is never admissible as substantive evidence of the offense on trial and the rule extends to proof of accusation of another crime as well as evidence of its actual commission. General as this rule is in its application, it is subject to a number of exceptions, which the curious may find elaborately discussed in 1 Wharton on Criminal Evidence (10 Ed.), page 59 et seq. Aside from these exceptions, however, if appellant and his counsel had not by admissions neutralized whatever hurtful effect might have been produced by the admission of evidence in regard to the carrying of concealed weapons by appellant, the testimony in regard to same was not improper under the rule that evidence of the possession by appellant of instruments with which a crime was perpetrated may be admitted to show an intent or purpose to commit the crime with which he is charged, although such proof implicates him in another and different crime. [Commonwealth v. Wilson, 2 Cush. 590; Commonwealth v. Gallagher, 124 Mass. 29; Commonwealth v. Levy, 126 Mass. 240; People v. Larned, 7 N. Y. 445; Robbins v. People, 95 Ill. 175; People v. Hope, 62 Cal. 291; State v. Wintzingerode, 9 Ore. 153; Ruloff v. People, 45 N. Y. 213; 2 Wharton on Criminal Evidence (10 Ed.), p. 1557.]

V. *Instructions.*—Appellant assigns as error the giving of all of the instructions. We have carefully reviewed them and find them to be in the forms that have frequently been approved by this court. Declaring as they do the law applicable to the case under

the evidence, we hold appellant's contention in this regard without merit.

VI. *The Verdict.*—It is claimed that the evidence does not warrant a verdict of murder in the first degree. The entire atmosphere of the case is indicative of a design and purpose of the appellant and his codefendant to kill if their apprehension was attempted. Armed with deadly weapons, they were in the nighttime ''skulking'' (the word is not too strong) in the neighborhood where the shooting subsequently occurred. A most searching cross-examination failed to elicit from the appellant any reasonable explanation for his presence there with his codefendant at the unusual hour of 11:30 p. m. Upon seeing the officer they fled precipitately. Called upon to stop, they did so, with the result that the officer received five mortal wounds. That he fired a shot is not shown by the evidence of a single witness except appellant and his codefendant. Disinterested witnesses testified that the officer did not fire a shot, and the correlative facts give credence and force to this testimony. The jury did not believe the testimony of appellant and his codefendant, but by reason of their testimony the court properly gave an instruction for murder in the second degree and lesser degrees of homicide, and they have no ground of complaint on this score. The fact is that under the evidence the trial court was liberal in its instructions, and appellant received the benefit of every fact in evidence upon which an instruction could properly be predicated. The verdict for murder in the first degree was authorized under the evidence, and we overrule appellant's contention to the contrary.

VII. *Remarks of Prosecuting Attorney.*—The remark of the prosecuting attorney that ''the people of Jackson county did not believe in highwaymen, bullies or murderers'' is most seriously complained of by

appellant.   Prosecuting attorneys as a rule should con-
fine their remarks to a legitimate discussion of the facts
developed on the ·trial and to the instructions based
thereon.   [State v. James, 216 Mo. 394.]   This does
not mean, however, that counsel may not in argu-
ment discuss the prevalence of crimes such as that for
which the defendant is on trial, if same exists, and
also indulge in such comments as may legitimately be
based thereon.   [State v. Hilton, 248 Mo. 522.]   Nor
is it error for a prosecutor to state his conclusions in
argument as to the status of the public mind, as in
this case, either in regard to crime generally or as to
the particular class of offenses or offenders then un-
der consideration.   The test being in each case: Are
the remarks, fairly construed, prejudicial to the de-
fendant?   Neither invective by a prosecuting attorney,
if called forth by the character which the evidence tends
to disclose, nor urgent appeals to the jury to do their
duty, will justify the reversal of a judgment.   [State
v. Zumbunson, 86 Mo. 111.]   That the people of the
county in question or of any locality for that matter,
do not believe in the class of characters designated
by the prosecuting attorney, but do believe that crime
should be punished, is, as suggested by respondent,
simply the statement of a truism.   There is in the re-
mark no intimation that the jury should be controlled
by other than the evidence or that the accused, if not
so shown by the evidence, belonged to the class desig-
nated.   In the Rogers case (253 Mo. 399, 415) we held
that it was not error for the prosecuting attorney to
state, ''Men, it would be a disgrace for you to acquit
the defendant under the testimony.''   In considering
objections to remarks made by prosecuting attorneys,
the distinction should always be made between strong
denunciation if sustained by the evidence and abuse of
the defendant of which there is no evidence.   [State v.
Allen, 174 Mo. 689, 698.]   In the instant case there

264Mo25

was no denunciation, although the evidence might have permitted it, but simply a declaration of the attorney's opinion of the manner in which the people of Jackson county regarded the designated violators of the law. Appellant could not reasonably be said to have been prejudiced by this remark, and we hold his contention to be without merit.

This was a heinous murder. Appellant's guilt was indubitable. His defense throughout was technical. He was in the trial accorded every right to which he was entitled. The judgment of the trial court should be affirmed, and the sentence imposed by the trial court ordered to be executed, and it is so ordered. All concur.