### SHAW v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. August 1, 1923.)

No. 6120.

1. **Criminal law ⬙⟶1169(2)—Admission of incompetent evidence held harmless error.**

   On a trial for making false entries in the books of a national bank, proof of the making of any one of such entries is sufficient to sustain the indictment, and the admission of incompetent evidence as to the making of other entries charged was not prejudicial error.

2. **Criminal law ⬙⟶400(6)—Secondary evidence held admissible to show entries in bank books.**

   On a trial for making false entries in the books of a national bank, where the book in which the entries were made had been stolen and could not be produced, the testimony of a bank examiner, based on a memorandum made by him from the book and containing copies of the entries, *held* admissible.

3. **Banks and banking ⬙⟶288½, New, vol. 11A Key-No. Series—Indictment for embezzlement and making false entries held insufficient.**

   Under Rev. St. § 5209, as amended by Act Sept. 26, 1918, § 7 (Comp. St. Ann. Supp. 1919, § 9772), making it a criminal offense for any officer, agent, or employé of "any Federal Reserve Bank or of any member bank" to embezzle the funds or make false entries in the books of such bank, with intent, etc., an indictment for either offense must allege that the bank was a Federal Reserve Bank or a member bank, and it is not sufficient to allege that it was a national bank.

4. **Indictment and information ⬙⟶60—All facts essential to constitute the crime must be alleged.**

   It must be made to appear from the indictment, without going further, that the acts charged will, if proved, support a conviction for the alleged offense.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Criminal prosecution by the United States against Hiram C. Shaw. Judgment of conviction, and defendant brings error. Reversed.

E. L. McHaney, of Little Rock, Ark., William H. Martin, of Hot Springs, Ark., and Eugene Blodgett, of St. Louis, Mo. (Martin, Wootton & Martin, of Hot Springs, Ark., Murphy, McHaney & Dunaway, of Little Rock, Ark., and Blodgett, Rector & Pierce, of St. Louis, Mo., on the brief), for plaintiff in error.

---

⬙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles F. Cole, U. S. Atty., of Batesville, Ark. (Robert E. Fuhr, Asst. U. S. Atty., of Paragould, Ark., on the brief), for the United States.

Before LEWIS and KENYON, Circuit Judges.

LEWIS, Circuit Judge.  Plaintiff in error, Shaw, was convicted and sentenced on two counts of an indictment which charged that he, while agent and officer of the Citizens' National Bank of Hot Springs, Ark., did in April, 1921, make certain false entries in a book of the bank known as the register of certificates of deposit, with intent to deceive the officers of the bank and any agent appointed to examine its affairs, and to injure and .defraud the bank; that in June, 1921, being such agent and officer he received and took into his possession by virtue of his position certain moneys to the amount of $6,340.00, which he embezzled and converted to his own use.  The indictment sets out in detail the entries and wherein they were false.  The falsity as to each of the thirty certificates designated by number consisted, as charged, in entering upon the register a less sum than that for which the certificate was issued.  These instances taken from the list of certificates embodied in the charge will illustrate:

| Number Certificate. | Amount Entered. | Certificate Issued for. |
| --- | --- | --- |
| 49182 | $199. | $299. |
| 49203 | 130. | 280. |
| 49218 | 450. | 700. |
| 49401 | 500. | 750. |
| 49463 | 689.90 | 889.80 |

The total amount of the thirty issued certificates was $14,228.30 as shown on the register, but in fact the total as shown by the certificates themselves was $20,568.30.

The other charge, of embezzlement, was an appropriation by Shaw of the difference between the two amounts.

Of the ten specifications of error eight are directed to the action of the court in admitting and refusing to strike out testimony given by witnesses William R. Young, Ellis E. Young and Claude E. Marsh. Shaw was an employé in the bank for about eight years.  He testified that he resigned on June 12, 1921, and quit the bank's service.  The president testified that he was discharged on June 18.  At the time he went out, and for some time theretofore, he had charge of the book in which was kept a record of the certificates of deposit, known as the register, and also of the book containing entries of savings accounts. As a rule, and with few exceptions, he received the money for certificates of deposit and issued the certificates and entered the transaction in the register. .He also paid the issued certificates, sometimes the full amount at once and sometimes in partial payments.  In that department he was known as both receiving and paying teller.  A few days after his relations with the bank ceased he went to St. Louis, returned to Hot Springs on June 28, and on the night of that day the bank was entered and the register of certificates of deposit and the book containing the savings accounts and other bank books were stolen and

carried away, and none of them have been found or returned. The combination of the lock on the safe in which the stolen books were kept had not been changed after he went out, nor had the key to the bank, carried by Shaw, been surrendered by him. William R. Young, national bank examiner, made an examination of the bank in January, 1921. He was assisted by his son, Ellis E. Young. The latter, under the supervision of his father, took off a list of the unpaid certificates of deposit from the register. This list was produced at the trial and both father and son gave testimony that it was correct, and that it showed what the register of certificates of deposit showed as to the amount remaining unpaid at that time on each certificate. The certificates themselves were also produced at the trial. All but three of them were issued by Shaw. The three were issued by another employé of the bank during Shaw's temporary absence, but the uniform practice, when that occurred, was to place on Shaw's desk the necessary data so that the transaction might be entered by him. There had been part payments indorsed on twenty of the certificates named in the indictment and those payments, as testified to by both of the Youngs and by Marsh, cashier, were entered on the register as debits against the amount for which the certificate was originally issued. In these instances the memorandum made by Ellis E. Young did not show the original amount for which each of the certificates was issued but only the balance after deducting the amounts that had been paid on them. On the other ten certificates no payments had been made, hence the memorandum showed the original amount appearing on the register as the amount for which each had been issued. Those amounts were severally falsely entered for less than stated in each certificate. The five entries set out above were of that kind. The register had been stolen, it was lost, and the testimony of William R. Young and Ellis E. Young, refreshed by the memorandum, was the best proof obtainable of the contents of the register. Ellis E. Young testified that the register stated as to each certificate the amount for which it had been issued, and the amounts, if any, that had been paid on each.

[1] The objection to their testimony was directed principally to the fact that as to certificates on which partial payments had been made by the bank the memorandum did not show the amounts for which they were originally issued, but showed only the balance due on each, which was arrived at by Ellis by deducting from the original amount of each certificate, as it appeared upon the register, the amounts that the register showed had been paid on each, and it was contended that these balances as to the twenty certificates on which payments had been made were not, of course, entries on the register, and that therefore, as to them, the amounts so named in the indictment were not false entries (were not entries at all), and there was nothing to sustain the charge as to them. Of course, neither of the Youngs could recall the original amount for which each of the twenty certificates had been issued, those amounts not being noted in the memorandum. Conceding all of that to be true, the proof clearly establishes and the brief of counsel for plaintiff in error admits that as to ten of the certificates on which no partial payments had been made the memorandum shows the original amount of each as entered in the register and charged in the indictment

as false entries. The ten original certificates produced at the trial each showed that it had been issued for an amount in excess of that shown by the entry in the register. The contention of counsel in that respect amounts to this, that notwithstanding the indictment charged and the proof established beyond question false entries on the register as to ten of the certificates, yet the charge against defendant that he made false entries on the register must fail because the charge that he made twenty other false entries as to the twenty other certificates has not been proven to be true. A statement of the proposition carries its own refutation. For a finding on competent and convincing proof that defendant made a false entry as to any one of the certificates named in the indictment establishes the charge; and on the embezzlement charge, proof that defendant took and converted to his own use any part of the $6340 would establish that charge.

[2] It is further argued that the court erred in not striking the testimony of the Youngs when it appeared that the memorandum which was the basis of their testimony, only took from the register the amount unpaid on each certificate, that their sole purpose was to find the liabilities of the bank on all unpaid certificates in order to make up a balance sheet and that they gave no attention to putting down on the memorandum the amount for which each certificate was issued as shown by the register. But when the thirty certificates were produced at the trial it appeared that no partial payments had been made on ten of them, from which it unavoidably followed that the amount shown on the memorandum as to each of them was the false amount entered on the register, representing in each instance that the certificate had been issued for a less sum than it was in fact issued for, and therefore a false entry. Under the circumstances, due to an abstraction and loss of the register, this was the best evidence obtainable to establish the charge of false entries, we are not able to see that it could have been done in any other way, none is suggested, and we think the testimony of the Youngs was competent. Like objection and motion to strike were made as to the testimony of Claude E. Marsh, the bank's cashier—principally as to what he said about the lost savings account book, the book of savings account which the bank rebuilt from savings account pass books held by and brought in by savings account depositors and other data, and the statements he made therefrom as to shortage of the bank in those deposits. But that testimony had reference to another count of the indictment on which defendant was acquitted, and if error was committed it was harmless.

[3] The sufficiency of the indictment was not challenged by demurrer, motion to quash, or motion in arrest, nor was that question specifically raised in argument, briefs, or assigned errors. There were, however, requests for directed verdicts of not guilty, and their denials were assigned and have been specified as error. But if the point was not properly raised we think it our duty to consider it. The indictment must stand on that part of Section 7 of the Act of September 26, 1918 (40 Stat. 967; Comp. St. Ann. Supp. 1919, Comp. St. 1923 Supp. § 9772), which repealed Section 5209, R. S. (Comp. St. § 9772), and enacted in its stead a new section, designated as Section 5209. The counts of the indictment on which Shaw was convicted were good

under the old repealed section. Are they good under the new? Old section 5209, passed for the protection of National Banks against the acts which it defined as crimes, was not in force at the times the alleged offenses of which Shaw was convicted are charged to have been perpetrated. It was repealed by the Act of September 26, 1918. The new section which took its place reads thus:

"Any officer, director, agent, or employé of any Federal Reserve bank or of any member bank as defined in the Act of December 23, 1913, known as the Federal Reserve Act, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of such Federal Reserve bank or member bank * * * or who makes any false entry in any book, report, or statement of such Federal Reserve bank or member bank, with intent," etc.,

shall be deemed guilty of a misdemeanor. In this case there is no count of the indictment which charges or states or intimates that the Citizens' National Bank of Hot Springs was a Federal Reserve bank or a member bank at the times the alleged offenses were committed. The old repealed section applied only to National Banks, the new only to Federal Reserve banks and member banks. Since the substitution of the new section for the old no Act of Congress has been called to our attention, and we can find none, which declares that the acts charged to have been done by Shaw are criminal offenses, unless the Citizens' National Bank, of which he was an officer and agent, was at that time a Federal Reserve bank or member bank. There is no such charge in this indictment, neither is there any proof of the fact. The Act establishing Federal Reserve banks (38 Stat. 251 [Comp. St. §§ 9785–9805]) requires that all National banking associations shall apply for membership, and it names the conditions on which they may come in as member banks, and it provides that those that do not come in may be dissolved only in a suit brought by the Comptroller for that purpose. They were not made members, nolens volens, and presumptions may not be indulged to cure material defects in criminal pleading. That Act also permits banks organized under State laws to become member banks, and subjects them as members to Federal jurisdiction. The acts charged to have been committed by the defendant would thus be in violation of new Section 5209, if the Citizens' National Bank was then a Federal Reserve bank or member bank, but the charge that it was a National Bank is an immaterial fact when it is not additionally charged to be a member bank. No charge that it was a Federal Reserve or member bank was made or proven, and the omission left wholly out of the case the relation of defendant required by new Section 5209. If a like charge were made against an officer or agent of a State bank, an indispensable element of the charge to bring the offense within the jurisdiction of a Federal court would be that it was a member of a Federal Reserve bank. There being no statute defining the acts charged against the defendant to be criminal offenses on the ground only that he was an officer and agent of a National bank, we think it equally true that an indispensable element of the charge was that the National bank of which he was an officer and agent was at the time the acts were committed a Federal Reserve or member bank. The omitted matter was not, we think, of form only and curable by the

statute of jeofails, R. S. § 1025 (Comp. St. § 1691); but substantive, an element of the offense defined.

[4] It is a general rule, that from the face of the indictment itself it must judicially appear to the court that an offense has been committed. "The omission of any fact or circumstance necessary to constitute the offense will be fatal." 1 Wharton on Crim. Law (7th and Rev. Ed.) § 285. This must be so on principle, because a verdict is of no more aid than a plea of guilty when the court comes to inquire whether punishment may be inflicted. Chief Justice Marshall, in The Hoppet, 7 Cranch, 389, 394 (3 L. Ed. 380), said that one of the reasons for the rule that the accusation on which the prosecution is founded should state the crime which is to be proved, and state such a crime as will justify the judgment to be pronounced, was "that the court may see with judicial eyes that the fact, alleged to have been committed, is an offense against the laws, and may also discern the punishment annexed by law to the specific offense." In U. S. v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588, it is said:

"It must be made to appear—that is to say, appear from the indictment, without going further—that the acts charged will, if proved, support a conviction for the alleged offense."

In U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516, it is said to be the universal rule "that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading." In U. S. v. Cook, 17 Wall. 168, 21 L. Ed. 538, it is said:

"No indictment is sufficient if it does not accurately and clearly allege all the ingredients of which the offense is composed."

See also U. S. v. Simmons, 96 U. S. 360, 24 L. Ed. 819; U. S. v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698; Pettibone v. U. S., 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419; Dunbar v. U. S., 156 U. S. 185, 190, 15 Sup. Ct. 325, 39 L. Ed. 390; Fitzpatrick v. U. S., 178 U. S. 304, 20 Sup. Ct. 944, 44 L. Ed. 1078; Ledbetter v. U. S., 170 U. S. 606, 18 Sup. Ct. 774, 42 L. Ed. 1162; Moore v. U. S., 160 U. S. 268, 16 Sup. Ct. 294, 40 L. Ed. 422; Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830.

We are constrained to hold that the indictment does not charge the commission of an offense within the jurisdiction of the trial court.

Reversed and remanded with directions to discharge defendant.