### SHAW v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 23, 1924.)

No. 6588.

**1. Indictment and information ⟨⟩6 — Statute requiring "prosecution" in division where crime was committed does not include indictment.**

In Judicial Code, § 53 (Comp. St. § 1035), providing that, when a district contains more than one division, all prosecutions shall be had within the division where the offenses were committed, unless the court or the judge, upon application of the defendant, shall order the cause transferred, the word "prosecution" refers to proceedings after the indictment is found and returned, and the court in the division where the offense was committed is not

without jurisdiction to try the accused because the indictment was returned in another division.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Prosecution.]

**2. Grand jury ⟨⟩19—Objection to qualification of jurors waived by failure to file plea in abatement.**

Objection to the competency or qualification of grand jurors who returned an indictment is waived by failure to file a plea in abatement before pleading to the indictment.

**3. Criminal law ⟨⟩1186(4)—Judgment not reversible on grounds not prejudicial to defendant.**

Since a defendant could not be prejudiced by the finding of the indictment against him by grand jurors drawn from another division of the district than the one where the offense was committed, such fact is not ground for reversal of a judgment against him, under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246.)

**4. Criminal law ⟨⟩542—Testimony given by witness since deceased held admissible on trial under new indictment.**

The testimony of a witness given on a former trial, but who had later died, held admissible on a second trial of defendant for the same offense, though under a new indictment; the first indictment having been held defective.

**5. Criminal law ⟨⟩696(2), 698(1)—Statement by witness held not error, in absence of objection or motion to strike.**

Where a witness, on the trial of defendant for making false entries in the books of a bank, testified without objection that he found entries which were "improper," and, in response to a direct question by the judge, that he supposed they would be called "false," and no motion was made to strike out his answer as a conclusion, no error was committed.

**6. Criminal law ⟨⟩369(2)—Competent and material evidence not inadmissible merely because it tends to prove another offense by defendant.**

If evidence is competent and material, and relevant to the issues on trial, in a criminal case, it is not rendered inadmissible merely because it may tend to show that defendant is also guilty of the commission of another crime.

**7. Criminal law ⟨⟩361(1)—Refusal to receive evidence to disprove other offense incidentally appearing held not error.**

Where the books of a bank in which defendant was charged with having made false entries had been stolen, and it was necessary to show that fact as a foundation for admission of secondary evidence, refusal to receive evidence that defendant did not steal the books held not error.

**8. Criminal law ⟨⟩829(18) — Refusal of requested instructions not error, where points covered by charge given.**

Refusal of instructions, requested by defendant, that certain matters must be proved beyond a reasonable doubt, held not error, where the points contained in them were fully covered by the charge given.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Criminal prosecution by the United States against Hiram G. Shaw, Jr. Judgment of

conviction, and defendant brings error. Affirmed.

See, also, 292 Fed. 339.

E. L. McHaney, of Little Rock, Ark. (Murphy, McHaney & Dunaway, of Little Rock, Ark., on the brief), for plaintiff in error.

Charles F. Cole, U. ,S. Atty., of Batesville, Ark.

Before LEWIS and KENYON, Circuit Judges, and FARIS, District Judge.

FARIS, District Judge. Plaintiff in error, who was the defendant below, was heretofore indicted and convicted in the Western division of the Eastern district of Arkansas, on two counts of an indictment which charged him with the making of certain false entries in the books of the Citizens' National Bank of Hot Springs, Ark., and with the embezzlement of certain moneys from this bank. Upon his conviction on the former trial he sued out a writ of error to this court, wherein such proceedings were had as resulted in a reversal of the case, with instructions to discharge him. The error noticed by this court, when the case was here before, dealt, so far as need here be mentioned, with the omission in the indictment, of the allegation that the Citizens' National Bank of Hot Springs, Ark., was a member bank of the Federal Reserve Bank of St. Louis, Mo., for the Eighth Federal Reserve District. Shaw v. United States, 292 Fed. 339.

When the mandate of this court came down, the statute of limitations had wellnigh run. So it was deemed expedient to procure immediately another indictment, which was done. This indictment was found and presented by a grand jury impaneled, sworn, and sitting in the Eastern division of the Eastern district of Arkansas, instead of the Western division, wherein the offense was committed. It does not appear, except by inference, whence the members of this jury came, but this inference lends such color to the view that they came from territory wholly within the Eastern division that this fact may be conceded. After the return of this indictment in the Eastern division of the Eastern district of Arkansas, an order was made therein transferring the case to the Western division for trial, whereon defendant was found guilty on nine counts charging the making of divers false entries in the books of the bank, and his punishment fixed at imprisonment in the penitentiary for a term of five years and a fine of

$5,000. To reverse this judgment and sentence, defendant sued out and now prosecutes this writ of error.

Some forty assignments of error are made, but in the brief and argument these fell into five classes and they may all be disposed of within that limit of discussion. It is urged for reversal (a) that the trial court had no jurisdiction, because the prosecution was begun in the Eastern division of the Eastern district of Arkansas, by the finding and presentment of the indictment in that division, instead of in the Western division, wherein the offenses were alleged to have occurred; (b) that the court erred in admitting in evidence the testimony of a witness upon the trial on the former indictment, who had died since that trial; (c) that a witness, who was a national bank examiner, was permitted in his testimony to characterize entries in the books as being false entries; (d) that defendant was not permitted to show that the bank's books, which had been stolen, were not stolen by him; and (e) that the court erred in refusing certain charges which defendant requested.

[1] The contention that the court below had no jurisdiction to try defendant is bottomed, as already said, upon the fact that the indictment was found and returned by a grand jury in the Eastern division of the Eastern district of Arkansas, while the offense was committed in the Western division of such district. Defendant contends that, whatever may have been the law before the enactment of section 53 of the Judicial Code (Comp. St. § 1035), the effect of that section is to so limit the jurisdiction of the District Courts of the United States as that criminal offenses can be prosecuted only in the division in which the offenses occurred.

The pertinent language of this section is: "When a district contains more than one division, *, * * all prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court, or the judge thereof, upon the application of the defendant, shall order the cause to be transferred for prosecution to another division of the district." It is fairly plain that the question mooted, turns upon the point whether, within the purview of the language above quoted, the finding and presentment of an indictment is a part of the prosecution, or to state it more aptly: Does the requirement that the prosecution be had in the division

wherein the offense was committed, require also that the indictment be found and presented in that division?

The question is one about which there has been some diversity of opinion. Cf. Biggerstaff v. United States (C. C. A.) 260 Fed. 926; United States v. Chennault (D. C.) 230 Fed. 942; Rose, Federal Jurisdiction and Procedure, 98. But in the late case of Salinger v. Loisel, 44 Sup. Ct. 519, 68 L. Ed. 989, decided by the Supreme Court of the United States, May 26, 1924, and not yet [officially] reported, it was said: "The contention is that the word 'prosecution' in the general provision includes the finding and return of an indictment. That the word sometimes is used as including them must be conceded. But there are also relations in which it comprehends only the proceedings had after the indictment is returned. Here we think it is used with the latter signification. It appears twice in the provision, doubtless with the same meaning. The first time is in the clause directing that 'all prosecutions' be had in the division where the offense was committed, and the second is in the clause permitting the court or judge, at the instance of the defendant, to order 'the cause to be transferred for prosecution' to another division. The connection in which it appears the second time shows that it refers to the proceedings after the indictment is found and returned; that is to say, after there is a cause susceptible of being transferred. Besides, had Congress intended to put an end to the prevailing practice of impaneling a grand jury for the entire district at a session in some division and of remitting the indictments to the several divisions in which the offenses were committed, unless the accused elected otherwise, it is but reasonable that that intention would have been expressed in apt terms, such as were used in some of the exceptional special statutes."

[2] Obviously, this ruling settles the point, unless a distinction is to be made from the fact, that in the case of Salinger v. Loisel, supra, the grand jury which found and presented the indictment was drawn from the body of the district, while in the case at bar the grand jury is characterized in the record, as the "grand inquest of the United States for the Eastern division of the Eastern district of Arkansas." This difference ought not seriously to affect the rule, in the light of the fact that the Supreme Court has now held, that the word "prosecution," as used in section 53 of the Judicial Code, does not include the finding

and presentment of an indictment, and of the further fact that this construction at once brings the question down to a mere matter of the alleged incompetency or disqualification of component members of the grand jury, which latter question was waived by the failure to file a plea in abatement or other similar plea before entering a plea of not guilty. Teal v. State, 22 Ga. 75, 68 Am. Dec. 482; Coburn v. State, 151 Ala. 100, 44 South. 58, 15 Ann. Cas. 249; State v. Carver, 49 Me. 599, 77 Am. Dec. 275; 8 R. C. L. 113, 114.

[3] Moreover, it is difficult to appreciate wherein defendant could have been hurt by the fact that the indictment was presented against him by utter strangers presumably, who ought to have been wholly unbiased and unprejudiced. Since he could not thus have been prejudiced, some reliance may be put upon the amended statute of jeofails. Act Feb. 26, 1919, 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246). It follows that this point should be disallowed.

[4] One Ellis E. Young testified for the plaintiff on the trial under the former indictment, and was cross-examined ad libitum by defendant; but, having died in the meantime, his evidence was offered in this case, and admitted against defendant's objection that the case at bar is a "different indictment and a different charge." The language of the objection is erroneous, in so far as it says that the charges contained in the two indictments are different. It is of course true that the indictments were not the same. The former indictment was held to be defective, and a new indictment was returned. The case was the same and between the same parties; the charges in both indictments were that defendant had made false entries in the books, and had embezzled certain moneys, of the Citizens' National Bank of Hot Springs, Ark. In short, though the first indictment was bad and a new one had to be procured, it was yet the same case. The mere fact, for example, that in a given civil case a petition may be held bad on demurrer, or held bad by an appellate court, or upon motion in arrest, and require amendment, does not mean that, when amended, the case becomes a wholly different case. The difference merely lies, as between a civil case and a criminal case, in the manner in which the amendment must be made. In a civil case it may be amended by the plaintiff sua sponte; but in a criminal felony the amendment must be made by procuring the return of a good indictment, by a grand jury. In case of a misdemeanor

the similarity is seen to be even more apposite, because the district attorney may file an amended information without recourse to a grand jury. So much is said only upon the contention that the necessity of procuring a new and good indictment had the effect to change the cause of action; for it is yet held in mind that the rule of confrontation does not apply to a civil case, but does apply to a criminal prosecution. If it be, then, as we hold it is, the same case, as it obviously is upon the same charge and between the same parties, the court committed no error in admitting the former testimony of the deceased witness. The courts hold that such testimony is admissible upon a second criminal trial *upon the same accusation* (People v. Gilhooley, 108 App. Div. 234, 95 N. Y. Supp. 636), *on the same issue and between the same parties* (Vaughan v. State, 58 Ark. 370, 24 S. W. 885; State v. De Witt, 2 Hill, 282, 27 Am. Dec. 371), *where the same issues are involved* (Thomas v. State, 106 Ala. 67, 17 South. 512), *and upon a trial of the same case* (Mattox v. United States, 156 U. S. 237, 15 Sup. Ct. 337, 39 L. Ed. 409). All of the required unities, then, being present, the point is not well taken.

[5] Upon the trial a national bank examiner, called as a witness, testified that he found entries in the books of the bank which were "improper." The court then inquired of the witness whether he meant that such entries were false, and the witness answered that he "supposed you would call them that." To this defendant excepted, on the ground that the witness' answer was a conclusion. We think no error was committed in this. The witness had already answered without any objection from defendant. The testimony was before the jury. If it was in fact hurtful to defendant, that hurt had been accomplished already. Affirmative action by the court upon a motion to strike out the answer of the witness offered the only method of salving this hurt. No such motion was made. Thompson v. United States (C. C. A.) 283 Fed. 895. Moreover, the use of the word "false" by the court did not necessarily invade the province of the jury, because this word has as its synonyms, among others, both "mistaken" and "erroneous."

[6, 7] Defendant complains that the court erred in refusing to permit him to prove that he had not stolen the bank's books of account. These books had been stolen by some one before the trial. Their contents were necessary as evidence on plaintiff's part, and if the books were not accessible because they had been stolen, then a foundation had to be laid by plaintiff in order to render secondary evidence of their contents. admissible. If evidence is competent and material, and relevant to the issues on trial in a criminal case, it is not rendered inadmissible merely because it may tend to show that defendant is also guilty of the commission of another crime. State v. Sanders, 76 Mo. 35; State v. Sherman, 264 Mo. 374, 175 S. W. 73. Whether defendant stole these books, or did not steal them, was collateral to the issues on trial. The trial court permitted the defendant to testify that he was not in Hot Springs at the time the books were stolen. We think this was the utmost the court was required to do, so far as concerns the trial of this wholly collateral question. Since defendant was not charged with the theft of these books, and since he could not have been convicted on this trial of the theft of them, no duty was saddled on the court to try the issue of whether he had or had not stolen them.

[8] And, lastly, it is contended that the court erred in refusing to charge the jury as requested in divers instructions which defendant asked the court to give. One of these, as defendant's counsel concedes, is a type of all of the others. Requested charge numbered 14, which was refused, reads thus:

"You are instructed that, before you can find the defendant guilty on the third count of the indictment, you must find from the evidence beyond a reasonable doubt that he entered the certificate of deposit which was issued for $299 on the register of certificates of deposit for a less sum than the amount for which it was issued, and that he did so with the intent to deceive the officers of the Citizens' National Bank, or any agent appointed by the Comptroller of the Currency to examine the affairs of the said bank, and with the intent to injure and defraud said bank. If you find that he entered said certificate of deposit in said register for the correct amount for which it was issued, $299, or if you have a reasonable doubt about it, then your verdict must be for the defendant on said count of the indictment."

As forecast, defendant was charged in eleven counts. One of these—count 1—charged him with embezzling a large sum of money from the bank. On this count he was found not guilty. The second count charged him with making false entries in certain

of the bank's books, in which accounts of savings and savings depositors were kept. On this count he was likewise found not guilty. In each of the remaining nine counts, on which he was found guilty, he was charged with making false entries in the books of the bank in which was kept a register of certificates of deposit. Each count dealt with a different certificate of deposit and a different alleged false entry touching the same. The requested charges were refused by the court because he deemed that he had already covered the points contained in them.

A fair reading of the charge seems to bear out this view of the trial court. Repeatedly the court advised the jury that generally they must find and believe the defendant guilty beyond a reasonable doubt, and specifically as to divers phases the court required the jury to find the existence of a given fact beyond a reasonable doubt, before they were warranted in convicting him. Upon the other matters contained in the charge refused, the court said:

"It is not only necessary, gentlemen, in a criminal case, to prove the guilt of the defendant, but it must be proven that it was committed in the manner charged. This does not apply to the amount, but it applies to the description of the book; so, gentlemen of the jury, as to the second count, the question for you to determine is this: Are you satisfied beyond a reasonable doubt that it was the defendant who made these entries on this daily balance book, or book of control, or not? If you are not satisfied beyond a reasonable doubt, then, gentlemen of the jury, the defendant is entitled to the benefit of that doubt, and you verdict should be not guilty as to the second count. If, on the other hand, you are satisfied beyond a reasonable doubt that these entries were made by him on that book, that they were false, and that they were entered by him intentionally falsely, for the purpose of deceiving the bank examiner when he makes an examination, or defrauding the bank, or any of its customers, then, gentlemen of the jury, your verdict should be guilty. This also applies to the first count. * * * Now, when we come to the other nine counts, the same rule of law applies to them: That if there was a false entry as to these items, and he did it intentionally, and not by mere error, or unintentionally, and that the natural effect of it would be to defraud the bank, or the depositors who made it, he is guilty."

As seen, there were ten counts dealing

with alleged false entries. It was not the duty of the court to charge ten times in the same language, save and except as to amounts, and upon each count, touching which false entries were alleged to have been made. If he had done so, the charge would have been needlessly and unduly lengthy. In fair effect, what the court did was to charge as to the second count substantially as requested by defendant in the charges refused, barring amounts alleged, and then to say that what had been said as to that count likewise applied to the other nine similar charges for making alleged false entries.

We conclude that there were no errors warranting reversal, that the guilt of defendant sufficiently appears, and that the case ought to be affirmed, which accordingly is ordered.