## THE STATE v. ZUMBUNSON, *Appellant.*[*]

1. **Criminal Law**: LARCENY: EVIDENCE. · Defendant and his confederates inveigled the owner of horses into a sale stable, in St. Louis, where another confederate acted in the role of a buyer, and still another as a friend of all parties, in consummating a trade, and while his confederates were endeavoring to trick the owner of the horses into believing that he had traded them for certain mules, which the owner refused to do, the defendant took the horses and went off with them against the will and remonstrance of owner. *Held,* that defendant was properly convicted of grand larceny.

2. **Practice**: REMARKS OF COUNSEL: NEW TRIAL. It is no ground for new trial that counsel in argument to the jury misrepresented the facts in evidence. It is for the jury, in such case, to apply the correction.

3. —— : ——. Neither language of invective, by counsel, when called forth by the character of the crime, which the evidence tends to disclose, nor urgent appeals to the triers of the facts to do their duty, will justify the Supreme Court in reversing a judgment.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Joseph G. Lodge* for appellant.

*D. H. McIntyre,* Attorney-General, for the state.

NORTON, J.—The defendant was indicted in the criminal court of the city of St. Louis, and was charged in one count of the indictment with grand larceny, and in the other with feloniously receiving stolen property. He was convicted on the first count and acquitted on the second. From the judgment of conviction he appealed to the St. Louis court of appeals, which affirmed the judgment, and he now prosecutes his appeal to this court.

[*] Decided at the October term, 1882.

The State v. Zumbunson.

We have not been favored with a brief by defendant's counsel, and are thus left to an inspection of the record for the ascertainment of the grounds relied upon for reversal, the first and most material of which is the refusal of the court to give an instruction after the state had introduced all its evidence, to the effect that the evidence offered failed to make out a *prima facie* case against defendant, and that the jury should acquit. This instruction was properly refused, as the evidence on the part of the state tended to show that defendant, in conjunction with several others, had confederated and conspired together to cheat the prosecuting witness out of two horses which he had taken to St. Louis to sell ; that each of the conspirators had their respective parts to play ; that defendant assumed the role of an Illinois farmer with a pair of mules for sale, or trade, though the evidence tended to show that he was known in St. Louis by the police as a "capper" ; that defendant and his confederates inveigled the prosecuting witness into the sale stable of one Honig, where another confederate acted in the role of a southern mule buyer, and still another as a friend of all parties in consummating a trade with the prosecuting witness for his horses ; that while these parties were engaged in trying to trick the prosecutor, whereby it should appear that he had traded his horses for the mules, and while the prosecutor was protesting and refusing to trade, or exchange them for the mules, defendant took the horses and went off with them, against the will and remonstrance of the owner.

The questions of law arising upon this state of facts were fairly put to the jury in the instructions given by the court, in one of which they were told that if they believed, from the evidence, that defendant took and carried away the horses in good faith, believing that he had traded mules for them, they would acquit him.

It is also insisted that the court erred in not granting a new trial, because, in the closing argument, the prose-

cuting attorney said "that the defendant belonged to the worst gang of horse thieves that ever infested this, or any other city. They are worse than burglars and highway robbers. They have done more to injure St. Louis than any other class of criminals. He belongs to a gang of horse sharks, of whom Dan. Honig is the head. They have about ruined the horse trade here, and make it their business to rob every countryman that comes here. I thank God that the gang is about broken up. You have it in your power to punish them now and vindicate the law. If you do not find defendant guilty, never do you dare complain when you hear of these robberies, committed by this gang, hereafter. If you do not convict him, you say to them all, go on with your thieving and robbing, we give you full license, by our verdict, to do so." While the prosecuting attorney may, and perhaps did, go beyond the line of propriety in the remarks indulged in by him, they contained no misstatement of law, which, if made, the court could and should have corrected, and if the remarks misrepresented the facts or evidence, the jury before whom it was given could apply the correction. It is often the case that counsel disagree as to what the evidence was, and, also, as to the effect of the evidence, and in such cases it is for the jury to settle the controversy and determine the question.

Neither language of invective, if called forth by the character of the crime, which the evidence in a case tends to disclose, nor urgent appeals to the triers of the facts to do their duty, will justify us in reversing a judgment, especially so when the evidence discloses a cunningly devised scheme, as in the case before us, to cheat and steal under the forms of law, and when it is sufficient to support the verdict rendered.

Judgment affirmed, in which all concur.