# THE STATE v. RANO WHITE, Appellant.

## Division Two, July 14, 1923.

1. **EXHIBITING DEADLY WEAPON: In Defense of Home.** Defendant testified that about eleven o'clock at night some one was pounding on his door; that he saw some one leaving the yard, and saw two or three other men; that he had been robbed some time previously, and thought some one was trying to rob or steal something. After such persons had gone, he got his shotgun and proceeded some distance into the street, where was a parked automobile occupied by several men, which the sheriff and nightwatchman had halted as it was about to drive away. Defendant came up behind the sheriff, as he stood near the automobile, leveled his gun at him, cursed him and said he was going to kill all the officers and would start with the sheriff. *Held*, that defendant, at the time he made the assault upon the sheriff, was not defending his home against invasion, or his person against injury, or his property against loss or destruction, and he was properly convicted of the crime of exhibiting a dangerous and deadly weapon in a rude and threatening manner, and the statute authorizing his conviction did not transgress his constitutional rights.

2. ————: **Right to Bear Arms: Protection Against Aggression: Constitutional Statute: Section 3275.** That part of the Constitution (Sec. 17, Art. 2) declaring that "the right of no citizen to keep and bear arms in defense of his home, person and property shall be called in question" does not guarantee to a citizen the right to keep and bear arms for the purpose of his own aggression, wrong or assault upon the person or property of another, but it is a guaranty of the right to keep or bear arms for the protection or defense of his home, his person or his property; and such being its meaning, Section 3275, Revised Statutes 1919. declaring that if any person shall, in the presence of another, exhibit a dangerous or deadly weapon "in a rude, angry or threatening manner," etc., does not transgress the constitutional inhibition, but is a valid statute. The statute does not deny to a citizen the right to bear arms, or to exhibit them in a rude, angry or threatening manner, when his home or property is invaded or his personal safety threatened; but the Constitution does not give to the citizen the right to become the aggressor and seek out and assault another citizen by exhibiting and threatening him with a shotgun.

3. ————: ————: **Home as Castle: Instructions: Irrelevant: Abstract Statements of Law.** Instructions declaring that a man's home is

his castle, which no man has a right to invade, and that every man has a right to resist invasion thereof and to protect his family and his property by force, if necessary, and to bear arms for such purpose, have no application where the evidence establishes the facts to be that, if some persons had in the nighttime pounded upon defendant's door and invaded his yard, they had abandoned their effort to arouse him, and after they had gone away he procured his shotgun and went some distance into the street, and coming up behind the sheriff, who was in the act of arresting another, leveled the gun upon him and threatened to kill him, there being no pretense that the sheriff or any of his party had been upon defendant's premises. Such instructions, though correct abstract statements of the law, had no application to such facts, and were properly refused.

4. ——: Defendant as Witness: Cross-Examination: Previous Arrest: Motive. As a general proposition it would be error to ask defendant on cross-examination whether he had been previously arrested by the sheriff and to require him to answer. But where defendant was being tried for exhibiting his shotgun and threatening to kill the sheriff, and had testified that he did not know that the person at whom he pointed his gun was the sheriff until the sheriff turned around, that he and the sheriff were good friends and that he had no ill-feeling towards the sheriff, such inquiry was proper as tending to show defendant's motive and that he had a grudge against the sheriff.

5. —— : ——: ——: Search of House: Untimely Objection: Motive. Where defendant had testified that the sheriff, prior to the time he assaulted the sheriff with a shotgun, had searched his house, a later objection to an inquiry as to when the sheriff had searched his house was not timely. The examination tended to show a motive for defendant's assault upon the sheriff, and to disprove his claim of previous friendly relations.

6. ——: ——: ——: Subsequent Lawless Acts: Insufficient Objection. Defendant was asked if, on the following day after he had pointed his gun at the sheriff and threatened to kill all officers, he had not taken the star off of a special policeman, thrown it on the ground and shot a hole through it and had then said that was what he was going to do to the officers. Held, that if the acts and words indicated by the question were done and said, they tended to refute defendant's testimony that he had no ill-will towards the sheriff, and his objection that the inquiry was incompetent, irrelevant and immaterial was not sound.

7. ——: ——: ——: Impeachment: Previous Conviction. To affect the credibility of defendant he may be required to answer

on cross-examination whether or not he had been previously convicted of criminal offenses in the circuit court and the justice-of-the-peace court, where such convictions are facts.

8. ———: ———: ———: Other Objections: Matters Not Inquired About in Chief. On appeal the court considers only objections made at the trial. Where no objection was made to questions asked defendant on cross-examination that the inquiries did not relate to matters inquired about in his examination in chief, that objection, although made in the briefs, will not be considered.

9. ARGUMENT TO JURY: Based on Proper Evidence: Murder in Heart. There is no impropriety in counsel for the State arguing testimony properly admitted. Nor is it improper to argue that a defendant, who had pointed his shotgun at the sheriff and threatened to kill him, had murder in his heart.

10. ———: Respect for Law: General Objection. A statement by counsel for the State in his argument to the jury that "a verdict of not guilty in this case would do more to destroy respect for the law in my county than anything that could happen" was not prejudicial to defendant's rights; nor was a mere objection to it sufficient.

Appeal from Knox Circuit Court.—*Hon. James A. Cooley,* Judge.

AFFIRMED.

*Joseph Uptegrove* and *A. Doneghy* for appellant.

(1) It was error to overrule the motion to quash the information for the reason that that part of Sec. 3275, R. S. 1919, reading "or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner," is in direct conflict with Section 17, Article 2, of the Constitution, in that it emasculates the right guaranteed by the Constitution to bear arms *in an effectual manner* in defense of home, person and property, and whittles the right down until it is as worthless as was the young lady's permission to swim. It is the rude, angry and threatening manner which puts the despoiler to flight, and leaves the citizen in enjoyment of his constitutional rights. "Any act the necessary operation of which impairs or tends to impair a

constitutional guaranty is void.'' 12 Corpus Juris, 750; State v. Julow, 129 Mo. 163; State v. Berkley, 92 Mo. 41; State v. Wilforth, 74 Mo. 528. It might be suggested that the court, in order to save the statute, will add the further exception, to-wit: ''The provisions of this section shall not apply to persons who display such weapon in defense of home, person or property,'' but the Legislature having written in all the exceptions it deemed necessary, the courts are powerless to add others, for that would be making rather than construing law. Sutherland, State Con., secs. 328, 427, 430, 431, *expressio unius,* etc.; 36 Cyc. 1122, 1113, note 88; State ex rel. v. Fisher, 119 Mo. 351; Kehr v. Columbia, 136 Mo. App. 322. And there is peculiar ground for the court, in this case, adhering to the reading of the section as the Legislature wrote it, because when the Legislature wrote the section it was its intention to take from the citizen the right of self-defense. Prior to the enactment of the statute, as it now stands, Laws 1909, p. 452, the statute had carried such exception. See Laws 1877, p. 240. Self-defense is always permissible in common-law crimes, but this is a purely statutory offense, and in such cases motive and intent cut no figure. State v. Bruder, 35 Mo. App. 477; 12 Cyc. 148; Howell v. Stewart, 54 Mo. 404. (2) If this court should read the statute valid by writing in the defense of home, person and property, then, it was error for the trial court to refuse defendant's Instructions 10, 11. State v. Arnett, 258 Mo. 253; Archbold's Crim. Pldg. (5 Ed.) 327; 1 Hawkins, Pleas of Crown (7 Ed.) 175; Morgan v. Durfee, 69 Mo. 479. And if there were any objections to the wording of the instructions it was the duty of the court to frame and give a properly worded one. State v. Goode, 220 S. W. 854; State v. Moore, 160 Mo. 460. (3) It was error, over the objections of defendant, to permit the State to ask questions concerning matters not touched on in his direct examination, and questions which were incompetent for any purpose. State v. McGrath, 228 Mo. 413; State v. Larson, 238 S. W. 101. (4) The prosecuting attorney of Knox County, who

helped try the case, over objections, made remarks to the jury which were highly prejudicial. In one instance he said: "And I would say that a verdict of not guilty in this case would do more to destroy the respect for the law in my county, in my own county here, than anything that could happen," was peculiarly prejudicial. State v. Hess, 240 Mo. 147.

*Jesse W. Barrett*, Attorney-General, *Stratton Shartel*, Special Assistant Attorney-General, and *Robert W. Otto*, Assistant Attorney-General, for respondent.

(1) Defendant can be cross-examined on all facts and circumstances which are connected with the matters stated in his direct examination and which weaken the force of his testimony. Defendant, on direct examination, testified that he and the sheriff were the best of friends, and never had any trouble, attempting to dispel any motive for the crime. Relations between the defendant and the sheriff having been brought out upon direct examination, it was not error upon the part of the State to cross-examine the defendant upon troubles which had before taken place between the defendant and sheriff, especially in view of the fact that the former relations between the defendant and the sheriff had a very important bearing upon the principal issues, and upon the motive and intent of the defendant in this case. Secs. 4036, 5439, R. S. 1919; State v. Keener, 225 Mo. 500; State v. Meyers, 221 Mo. 612; State v. Spivy, 191 Mo. 111; State v. Blitz, 171 Mo. 542; State v. Thornhill, 174 Mo. 370. (2) It is no defense that defendant had been threatened with great bodily harm, or had reason to carry the weapon in the necessary defense of his person, home or property. State v. Gentry, 242 S. W. 398; State v. Keet, 269 Mo. 206, 209; State v. Conley, 280 Mo. 21; State v. Jackson, 283 Mo. 18, 25. (3) Section 3275 is not in conflict with Section 17, Article 2, Constitution of Missouri. State v. Keet, 269 Mo. 206, 209; State v. Gentry, 242 S. W. 399. This assign-

ment is not before this court for review.   The assignment does not state the nature of the facts which create the conflict.   State v. Swift & Co., 270 Mo. 694; Canning & Packing Company v. Evans, 238 Mo. 599; State v. Christopher, 212 Mo. 244.   (4)  In order to justify a reversal of judgment, it should appear that the remarks were prejudicial to the defendant.   The verdict of the jury could not have been unduly influenced by the remarks objected to.   State v. Mallon, 75 Mo. 358; State v. Elvins, 101 Mo. 246; State v. Prunty, 276 Mo. 359, 376; State v. Hess, 240 Mo. 147, 160; State v. Summar, 143 Mo. 220, 234; State v. Hart, 237 S. W. 481.

DAVID E. BLAIR, J.—After a change of venue from Adair County, defendant was convicted in the Circuit Court of Knox County of the crime of exhibiting a dangerous and deadly weapon, as denounced by Section 3275, Revised Statutes 1919, and his punishment was assessed by the jury at imprisonment in the county jail for six months and a fine of $250.   After having moved unsuccessfully for a new trial and in arrest of judgment, he was sentenced on the verdict and has appealed.   The appeal was granted to this court because a constitutional question was raised and because the conviction was for a crime punishable by imprisonment in the penitentiary, even though such punishment was not imposed.   [State v. Woodson, 248 Mo. 705; State v. Underwood, 254 Mo. 469.]

The facts are few and simple.   On or about the night of July 2, 1921, at about eleven o'clock, Emery D. Waddill, Sheriff of Adair County, and A. C. McClelland, night watchman for the city of Kirksville, were walking along the streets of that city in the neighborhood of Centennial Avenue and Martha Street, near which point defendant and his wife resided.   Having their interest attracted to an automobile parked at that corner and occupied by several men, the officers halted it as it was about to be driven away.   The reason for stopping the automobile is unimportant.   However, an arrest of one or more of the occupants was made.

While Waddill was standing on one side of the automobile and McClelland on the other, defendant approached from behind Waddill with a shot gun in his hands and before his presence was discovered leveled the gun at Waddill, cursed him and said he was going to kill all the damned officers and would start with Waddill. Waddill was unarmed, but McClelland stepped around the automobile, drew his revolver and covered defendant with it. Defendant then lowered his gun and walked away. He was arrested two or three days later.

Defendant testified that someone had been pounding on the door of his house and his wife awakened him. He then saw someone leaving his yard and going toward the standing automobile, and saw two or three men also. He claimed to have been robbed a short time previously and thought that "somebody was trying to rob or steal something." He secured and loaded his shot gun and went out to investigate. In his own words, "I went down and run into the 'Law' unexpected." If further facts appear necessary to an understanding of the issues involved, they will be set out in the opinion.

I.   Both in the Circuit Court of Adair County and in the Circuit Court of Knox County, defendant filed his motion to quash the information. Such motions were overruled in both courts and timely exception was saved in the trial court. The motion to quash is based on the alleged fact that Section 3275, Revised Statutes 1919, is invalid, because it violates Section 17, Article II of our Constitution, in that said section of the Constitution guarantees to the citizen the right to keep and bear arms in defense of his home, his person and his property. Said Section 17, Article II, is as follows:

*Constitutional Statute.*

"That the right of no citizen to keep and bear arms in defense of his home, person and property, or in aid of the civil power, when thereto legally summoned, shall be called in question; but nothing herein contained is intended to justify the practice of wearing concealed weapons."

There is no evidence whatever in the record that at the time of the assault defendant was defending his home against invasion, his person against injury, and no substantial evidence that he was defending his property against loss or destruction. Defendant testified:

"I lowed somebody was trying to rob or steal something, I couldn't say positively they, were in my yard but there was one man she said was at 'the door shaking and knocking on it. I have just got her word for it."

The assault upon Waddill occurred at a distance from his home and defendant was the aggressor. He does not pretend to say that he thought the men he saw had any of his property. He simply took his gun and went out and away from his house to look into the cause of the violent knocking on his door, as he claims.

The assault upon the statute, as violative of the Constitution, is because such statute does not make the exception of the right of the citizen to bear arms, even when exhibiting the same in a rude, angry or threatening manner, when such act is in defense of home, person or property. The information must fall if the statute is invalid. The question was raised by motion to quash the information and is timely. The motion pointed out the supposed conflict with sufficient definiteness to raise the constitutional question when it alleged that the particular part of Section 3275, upon which the information is based, violates Section 17, Article II of the Constitution, which guarantees to the citizen the right to keep and bear arms in defense of his home, person and property.

We do not find that the constitutionality of the statute, when thus attacked, has been passed upon by this court. That part of the same section making it a crime to carry concealed weapons has been fully sustained. Convictions for exhibiting deadly weapons in a rude, angry or threatening manner have been sustained in this court. [State v. Gentry, 242 S. W. (Mo.) 398.] We have found no case where the constitutionality of that part of the statute has been discussed and no such cases have been cited by counsel. Section 17, Article II, of the Constitution authorized the Legislature to prohibit the

wearing of concealed weapons. Cases determining the constitutionality of that feature of the statute are cited, but they are not decisive of the exact question now before us, because of the exception in the constitutional provision.

So much of Section 3275 as applies here is as follows:

"If any person shall carry concealed upon or about his person a dangerous or deadly weapon of any kind or description, . . . or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, . . . he shall, upon conviction, be punished."

Prior to 1909 our statute (Sec. 1863, R. S. 1899) provided that "it shall be a good defense to the charge of carrying such weapon, if the defendant shall show that he . . . had good reason to carry the same in the necessary defense of his person, home or property." Sections 1862 and 1863, Revised Statutes 1899, were repealed by Laws of 1909, page 452, and new Section 1862 was enacted in lieu of the two former sections. New Section 1862 (now Sec. 3275, R. S. 1919) omitted from the exceptions the part of Section 1863, Revised Statutes 1899, above quoted. The words "carrying such weapon" in Section 1863, Revised Statutes 1899, clearly refer to the carrying of such weapon concealed. The repeal of that section did not change the law against exhibiting deadly weapons in a rude, angry or threatening manner.

The evident purpose of Section 17, of Article II is to render the citizen secure in his home, his person and his property. Its purpose is to deny to the Legislature the power to take away the right of the citizen to resist aggression, force and wrong at the hands of another. By no possible construction can that section of the Constitution be held to guarantee to the citizen the right to keep and bear arms for the purpose of his own aggression, wrong or assault upon the person or property of another. The right of the citizen to keep and bear arms for his own protection or in aid of the civil power, when thereto legally summoned, is the only right guaranteed

to the citizen. The moment the citizen ceases to act in protection of his home, his person or his property, unless acting in aid of the civil power, he steps out from under the protection of the Constitution and his right to bear arms may be taken away or limited by reasonable restrictions. The reasoning of the cases sustaining statutes prohibiting the carrying of concealed weapons is applicable here also. [State v. Wilforth, 74 Mo. 528; State v. Shelby, 90 Mo. 302; State v. Keet, 269 Mo. 206.]

Although the citizen has the right to bear arms and to exhibit the same in a rude, angry or threatening manner, without fear of successful prosecution, when his home or possessions are invaded or his personal safety threatened, he has no such rights as the aggressor himself. The statute must be reasonably construed, and if a construction in harmony with the Constitution can be given to it, it is our duty to construe it in that manner. The only reasonable and sensible construction to give the statute is that the exhibition of deadly weapons in a rude, angry or threatening manner, when the act of aggression or assault is being committed *by* such citizen, is all that is prohibited.

The portion of Section 3275, Revised Statutes 1919, thus attacked is not only wise and salutary and in the interest of public peace and the protection of human life, but is also in harmony with Section 17, Article II, of the Constitution when its purpose is understood. The attack upon the statute and information is without merit.

II. Defendant assigns error in the refusal of his requested instructions numbered 10 and 11. It is unnecessary to quote them. They are based on the theory that a man's house is his castle, which no man may invade, and that every man has the right to resist such invasion and to protect himself, his home, his family and his possessions by force, if necessary, and to bear arms for such purpose and to exhibit same in a rude, angry and threatening manner. Both are proper abstract state-

Abstract Statements of Law.

ments of the law, but neither has any application to the facts in this case.

We have above pointed out that the acts complained of occurred at some distance from defendant's home. If someone had violently pounded on the door of his house, such person had abandoned his effort to arouse defendant and had left his premises and gone some distance away. Defendant does not contend, and the evidence clearly disproves, that Waddill or his party were upon defendant's premises that night. Defendant does not contend that whoever had pounded on his door had carried away any of his property. The act of such person in pounding violently upon his door, if such act was committed, is utterly inconsistent with an intention on his part to steal and carry away any of defendant's property. Such is not the usual conduct of a thief.

The act of defendant in taking his shot gun and going away from his home to the street intersection and pointing the gun at Waddill and threatening to kill him indicates that his act was in revenge for the disturbance or for previous arrests or possibly because he resented the act of the sheriff in making the arrest at the automobile. There is not the slightest substantial evidence that defendant was acting in defense of his home, his person or his property when he made the assault upon the sheriff. Both instructions were properly refused.

III. Error is assigned because the trial court permitted improper cross-examination of the defendant.

(a) Defendant was asked if the sheriff had ever arrested him and over his objection and exception was required to answer that the sheriff had arrested him. As a general proposition this would have been error (State v. Howard, 102 Mo. l. c. 148; State v. Wigger, 196 Mo. l. c. 99; State v. Duff, 253 Mo. l. c. 422), but, under the state of the record here, we think it was not error. Defendant claimed he did not know the person at whom he pointed the shot gun was the sheriff until he

Defendant as Witness: Previous Arrest.

turned around, although he admitted that in his excitement he may have said, after he recognized Waddill, that he was going to kill him. To show the improbability of his assaulting the sheriff, he claimed he and the sheriff were good friends and that he had supported him for office and that he had no ill-feeling toward the sheriff. We think it was proper to show that the sheriff had previously arrested him as tending to show defendant's motive and that he had a grudge against him. The same considerations apply to the question asked and required to be answered in relation to a previous arrest by McClelland, the nightwatchman.

(b)  Defendant was asked when the sheriff had searched his house and was required to answer. He had been asked and had answered without objection concerning the previous search of his house by the sheriff. His subsequent objection was not timely. This line of examination tended to show a motive for the assault by defendant and to disprove his claim of previous friendly relations with the sheriff.

*Untimely Objection.*

(c)  Defendant was asked if he had not taken the star off of a special policeman in Kirksville and thrown it on the ground and shot a hole through it and if he had not then said that was what he was going to do to the officers. This was the day following the acts here complained of. The objection made was to the competency, relevancy and materiality of the question. Defendant denied taking a star off of anyone, but said the officer took it off himself and he shot at it and hit it. He denied saying that that was what he was going to do to the officers. We think the objection made was not sound. If the acts and words indicated by the question were done and said, they tended to refute defendant's testimony as a witness that he had no ill-will toward the officers.

*Insufficient Objection.*

(d)  Defendant was asked and, over his objection that such question was incompetent, irrelevant and immaterial and tended to prove no issue in the case and that the record is the best evidence, was required to answer

that he had been arrested and convicted two **Previous Conviction.** or three times in the circuit or justice of the peace courts for criminal offenses. His answers indicated that such offenses were violations of the law against the sale of intoxicating liquors.

Section 5439, Revised Statutes 1919, provides that convictions for criminal offenses may be proven to affect the credibility of the witness, either by the record or by the cross-examination of such witness. This section has been held to apply to defendant as a witness. [State v. Spivy, 191 Mo. l. c. 111; State v. Heusack, 189 Mo. l. c. 312; State v. Barri, 199 S. W. (Mo.) l. c. 138.]

(e) None of the objections lodged by defendant to any of the foregoing cross-examination were based on the proposition that they did not constitute proper cross-examination of the defendant because the question related to matters not inquired about in chief. We do not **Other Objections.** mean to be understood as holding that such objections would have been good against any of the questions we have discussed, if they had been made. We are not considering the propriety of the cross-examination from that angle, because no such objections were made. We can only pass on the soundness of the objections actually made. We mention the matter simply because counsel for defendant urges the impropriety of such cross-examination for that reason in their brief, although they made no such objection at the time the testimony was offered. We find no reversible error in the cross-examination of defendant.

IV. The final assignment made in defendant's brief is that the trial court permitted improper argument by counsel for the State.

(a) The first instance appears where Mr. Dorian said: "Before we get very far in this case we find that these officers had arrested him and had searched his **Argument to Jury.** home with a search warrant." Counsel merely objected to the argument without stating the specific grounds and requested the court to

reprimand counsel. The court refused to reprimand counsel, but did sustain the objection as to the statement that defendant's home had been searched under a search warrant. Proceeding, Mr. Dorian then said: "And that is the reason he had murder in his heart, because of these arrests that these officers had made." Counsel for defendant then objected on the ground that defendant was not charged with murder and again asked for reprimand of counsel for the State. The court overruled the objection, and we find no error in the ruling. We have previously found that it was not error, under the facts in this record, to ask defendant if he had not been previously arrested by Waddill and by McClelland. If the testimony was properly admitted there was no impropriety in arguing such testimony before the jury. Nor was it improper to argue that defendant had murder in his heart when he had pointed his gun at the sheriff and threatened to kill him.

(b) The only other objection to the argument and the one the defendant claims was particularly prejudicial, was as follows: "And I would say that a verdict of not guilty in this case would do more to destroy the respect for the law in my county, in my own county here. than anything that could happen." The objection made was: "I object to that statement and ask that the jury be instructed to pay no attention to it." The objection was overruled and exception saved. While the objection was insufficient, in that no ground of objection was stated (38 Cyc. 1508), we do not think the argument was objectionable. Defendant cites and relies only upon the case of State v. Hess, 240 Mo. 147. The argument there held improper related to the statement by the circuit attorney of his belief in the guilt of defendant. Such statements have uniformly been held improper. The latest expression of this court upon the subject is found in State v. Cole, 252 S. W. 698.

The argument here made was evidently for the purpose of urging the jury to do its duty and vindicate the law. Such arguments have frequently been held not to

*Respect for Law.*

be error. In State v. Hart, 237 S. W. (Mo.) l. c. 481, the following argument was approved:

"Gentlemen of the jury, this case is going to pass to you twelve men now. Now you jurors may send out a warning or encouragement, whichever you may see fit. If there is any man on this jury that will stand for this sort of thing, then I am disappointed in my fellow men."

WHITE, J., then Commissioner, said:

"Where the record is such as is presented in this case, it is not improper for the prosecutor to refer to the prevalence of crime in the community, whether it appears from the evidence or is a matter of common knowledge, and with that in view to urge the jury to do their duty, and to argue that it would be a reflection upon them to fail to convict under the evidence before them. [State v. McBride, 231 S. W. l. c. 594; State v. Sherman, 264 Mo. 385, 175 S. W. 73; State v. Rogers, 253 Mo. 399, 415, 161 S. W. 770; State v. Zumbunson, 86 Mo. 113; State v. Rasco, 239 Mo. 581, 144 S. W. 449.]"

The cases cited by Judge WHITE fully sustain the conclusion reached by him and are sufficient to sustain the propriety of the argument made in the instant case. [See also State v. Stamper, 159 Mo. App. 382.]

This disposes of all the assignments of error insisted upon by appellant in this court. Finding no reversible error below, the judgment is affirmed. All concur.