STATE of Missouri,
Plaintiff–Respondent,

v.

Randy Raymond FRANKLIN,
Defendant–Appellant.

No. 53752.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 24, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 22, 1988.

Application to Transfer Denied
July 26, 1988.

938

James B. Herd, Deeba, Destefano, Sauter & Herd, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Randy Raymond Franklin, appeals from his convictions, after a jury trial, of assault in the second degree and of careless and imprudent driving. He was sentenced to a fine of $5,000 on the assault conviction and a fine of $250 on the careless and imprudent driving conviction. We affirm.

Defendant does not challenge the sufficiency of the evidence. The evidence, viewed in the light most favorable to the verdict, is that defendant was driving an automobile in the passing lane of a three

lane interstate highway. A police officer (victim) was standing in the center lane behind his squad car. He was directing traffic around a stalled rental truck which had been abandoned in the center lane. The emergency lights of his patrol car were flashing. Defendant pulled his vehicle from the outside passing lane into the center lane and struck the victim with the front right side of his automobile.

In his first point, defendant claims that the trial court erred in giving Instruction No. 5, the verdict director for the assault second charge. The State submitted the charge under the second paragraph of MAI–CR 3d 319.12: "[T]he defendant recklessly caused serious physical injury to Police Officer Charles Stark by running into him with an automobile...." In addition, the instruction stated, "A person acts 'recklessly' ... if he consciously disregards a substantial and unjustifiable risk that his conduct will result in serious physical injury and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

■ The trial court had previously sustained defendant's motion for a Bill of Particulars which requested the State to specify, *inter alia*, what acts defendant had performed recklessly. The State responded that the acts were "failure to maintain a proper lookout and/or changed lanes when unsafe to do so." Defendant argues that this language describing defendant's conduct was required to be incorporated into the State's verdict director on the assault second charge. We disagree.

The instruction, as given, mirrors MAI–CR 3d 319.12 and is therefore presumptively correct. *See* Rule 28.02(c). The instruction properly contains "the means by which the injury was caused"; namely, "running into the victim with an automobile." The purpose of the response to the Bill of Particulars was to enable defendant to sufficiently prepare his defense. *See* Rule 23.-04. It represented the evidence of conduct upon which the State was going to rely to prove that defendant had acted "recklessly." That evidence, however, is not a definition of the mental state, which is properly defined in the instruction.

Although the State's response to the Bill of Particulars may have a limiting effect on the evidence that the State may adduce at trial, it is not an element of the charge and is not includable in the instruction. The form for the instruction set forth in MAI–CR 3d is to be followed. Defendant's first point is denied.

■ In his second point, defendant contends that the trial court erred in giving Instruction No. 7, the verdict directing instruction for the careless and imprudent driving charge. We note that the challenged instruction mirrors MAI–CR 3d 332.40. The MAI–CR 3d approved instructions are mandatory. This court is prohibited from declaring that the instruction adopted by the Supreme Court is erroneous. *State v. Singer*, 719 S.W.2d 818, 823 (Mo.App.1986); *see also* Rule 28.02(c). Although some dissatisfaction has been expressed with the limitation on our review of claims of instructional error, *see Singer*, 719 S.W.2d at 823–825 (Dixon, J., dissenting), any change therein is the prerogative, not of this court, but of the Supreme Court. Defendant's second point is denied.

■ In his third point, defendant argues that the trial court erred in refusing his tendered instruction on the defense of accident. An assault is a crime against the person. Chapter 565, RSMo (1986). Pursuant to Section 563.070, RSMo (1986), conduct which would constitute a crime under Chapter 565 "is excusable and not criminal when it is the result of accident in any lawful act by lawful means without knowingly causing or attempting to cause physical injury and without acting with criminal negligence." A finding that defendant committed all the elements of the offense charged, but that his conduct was an accident, is incongruous. *See* MAI–CR 3d 304.-11 D. Conduct which is found to constitute assault is not "a lawful act by lawful

means" and is inconsistent with the defense of accident. Defendant's third point is denied.

In his fourth point, defendant claims error in the trial court's refusal of his proffered instruction on the theory of negligence. No jurisprudential purpose would be served by a written opinion on this point. Defendant's fourth point is denied pursuant to Rule 30.25(b).

In his fifth point, defendant asserts that he was entitled to a withdrawal instruction relating to evidence that defendant was "tailgating." First, there are no withdrawal instructions in MAI–CR 3d; and defendant cites no specific authority authorizing them in a criminal case. Second, the evidence of "tailgating" was admissible and relevant to the issue of whether defendant failed to keep a lookout; i.e., if he was tailgating it would be difficult to keep a proper lookout. Defendant's fifth point is denied.

In his sixth point, defendant claims the trial court erred by permitting the State to operate an overhead emergency light from a police car within two feet of the first row of jurors. Defendant also contends that "no effort was made [in the courtroom] to duplicate the lighting, distances or physical conditions at the scene."

The trial court has broad discretion to determine the admissibility of demonstrative evidence. *State v. Curry*, 714 S.W.2d 798, 800 (Mo.App.1986).

Demonstrative evidence which tends to establish any fact in issue or throw light on the controversy and aid the jury in any way in arriving at a correct verdict is admissible within this rule, and if it accurately portrays the event or circumstances sought to be shown, it should not be rejected because by presenting an accurate portrayal it tends to be inflammatory.

*State v. Holmes*, 609 S.W.2d 132, 136 (Mo. banc 1980).

Here, a highway patrolman, Officer Schmidt, testified that the overhead emergency light produced in court had the same design as the lights on the victim's police car. The victim stated that he had his lights flashing at the time of the accident and three witnesses called by the State corroborated his testimony. Defendant's witnesses said that the flashing lights on the police car were not noticeable. Operating similar lights before the jury could have aided the jury in determining if the emergency lights on the squad car could have been seen at the time of the accident. The trial court did not abuse its discretion by admitting such evidence. Defendant's sixth point is denied.

In his seventh point, defendant asserts that the trial court erred in refusing defendant's evidence about the use of road flares, reflective clothing, and road signs to enhance the visibility of the victim. The State called the highway patrolman, Officer Schmidt, as a witness in its case in chief. The prosecutor qualified Schmidt as an expert on handling traffic hazards on the highway. He then elicited testimony from the patrolman that, in the daytime, he neither wore reflective vests nor used flares and that the highway patrol did not even supply vests. On cross-examination, the patrolman stated that, given the location of this occurrence, the use of flares would have made no difference in the visibility of the victim.

Defendant called as a witness his co-worker, Robert McGeorge, and arguably qualified him as an expert in road safety. The following colloquy then occurred:

[DEFENSE COUNSEL]: Now, would you tell us please with reference to road flares, without going into great detail, would you indicate *why* road flares were recommended. (emphasis added).

[PROSECUTOR]: Judge, I object to this. This is irrelevant. It's also improper under—unless it's related to the facts of this case and also we don't know what type of flares.

THE COURT: The objection will be sustained.

\*    \*    \*    \*    \*    \*

[DEFENSE COUNSEL]: Judge, if permitted to testify, this witness would testify that road flares of the type that were used at the scene on this particular day after the officer was injured and those of the type that have already been described as being aboard the police cruiser are commonly used for purposes of visibility and in that he was so taught in those schools that he has attended. Now, there have been several issues made in this case about visibility, about the visibility of the lights. The defendant's contention in this case is that this was an accident and that his visibility of the officer would have been vastly improved had the officer put out road flares or done—put on the reflective clothing or put out the pop-up road signs all of which would have enhanced his visibility to the defendant and other drivers, and I think that's very, very relevant in this case.

*   *   *   *   *   *

THE COURT: Again, the issue is whether or not the defendant was guilty of some criminal offense and not whether or not in comparison with the negligence of the police officer in this particular case one was more negligent than the other or whether or not the police officer's conduct contributed to the causing of the "accident." The issue is whether or not given the conditions that existed, the defendant violated some criminal statute and the elements of the criminal statute, and the actions of the police officer as to what he might have done or what he should have—What he could have done in retrospect is not a relevant issue on the issues before the jury in this particular case, so the objection will be sustained, and counsel is again directed not to inquire into that.

Defendant posits that the controverted evidence was relevant because it "was not aimed at contributory fault ... but was aimed at disclosing police procedures in traffic hazard situations which would have affected defendant's lookout duty and *upon which he had a right to depend."* Defendant also contends that, when the prosecutor opened up the matter with the State's witness, defendant had a right to dispute the testimony by evidence to the contrary.

The trial court is granted broad discretion in admitting or in rejecting evidence on relevancy grounds. *Missouri Commercial Investment Co. v. Employers Mutual Casualty Co.*, 680 S.W.2d 397, 402 (Mo.App. 1984). Evidence is relevant if it tends to prove or to disprove a fact in issue, or to corroborate evidence which is relevant and which bears on a principal issue. *Arie v. Intertherm, Inc.*, 648 S.W.2d 142, 154 (Mo. App.1983).

■ In the instant case, the jury heard testimony about the use of certain warning devices as well as reflective vests in hazardous road situations. The evidence defendant sought to elicit from his expert was *why* these devices were recommended for traffic incidents. The salient issue for the jury was whether defendant's conduct caused the incident. For the trial court to permit defendant's inquiry into the benefits of warning devices would shift the jury's inquiry to the victim's conduct; namely, what measures could the victim have taken to avoid being hit by defendant? The expert's testimony therefore had no bearing on the principal issue of the case and interjected the false issue of the victim's comparative fault. The trial court did not abuse its discretion in rejecting the evidence because it was not relevant to any issue in the case.

■ In addition, the jury was competent to make the determination that the use of road flares, reflective clothing, and road signs enhances visibility on the highway without the aid of expert testimony. "[W]here the conduct in question does not involve skill or technique in an area where knowledge of such is a peculiar possession of the profession and does involve a matter which any layman (or court) could know, then such 'professional' testimony is not

necessary." *Goodenough v. Deaconess Hospital,* 637 S.W.2d 123, 126 (Mo.App. 1982) (quoting *Steele v. Woods,* 327 S.W.2d 187, 199 (Mo.1959)). Defendant's seventh point is denied.

■ In his eighth point, defendant asserts that the trial court erred in denying his motion to set aside his conviction under Count I, on the ground that his conviction under that count constituted double jeopardy. Defendant argues that the misconduct which supported his convictions of assault second (Count I) and of careless and reckless driving (Count II) consisted of identical acts: his failure to maintain a proper lookout and his unsafe lane change. As to Count I, there are two statutory elements: (1) defendant acted recklessly; and (2) caused serious physical injury to the victim. The statutory elements involved in Count II are: (1) defendant operated a motor vehicle; (2) he failed to keep a proper lookout; and (3) he thereby endangered the life and limb of any person.

If each crime requires proof of a fact that the other does not, there is no basis for a double jeopardy claim, notwithstanding substantial overlap in the evidence offered to establish the crimes. *State v. Murray,* 630 S.W.2d 577, 582 (Mo. banc 1982). Admittedly, in the present case there is overlap in the evidence necessary to establish each crime. Neither crime, however, has all its statutory elements in common with the other. There is, therefore, no basis for defendant's double jeopardy claim. Defendant's eighth point is denied.

The judgment is affirmed.

SIMON, P.J., concurs.

GRIMM, J., concurs in separate opinion.

GRIMM, Judge, concurring.

I concur, except as to the reasoning of the majority in denying defendant's second point that "This court is prohibited from declaring that the instruction adopted by the Supreme Court is erroneous."

When MAI–CR 2d was approved by the Supreme Court of Missouri effective January 1, 1979, it contained section 17.00, Supplemental Notes on Use. Subsection 3 thereof, entitled Reservation of Constitutional and other questions, says in part:

For the most part the Court has adopted the proposals of the Committee and Judge Houser for use by the bench and bar. This was done *without judicially deciding or foreclosing any legal,* constitutional, procedural, pleading, evidentiary, instructional or other issue which may arise in cases pleaded, tried or appealed under any laws covered by the MAI–CR and MACH–CR forms, *even though,* the forms and Notes on Use approved by the Court are followed and used (emphasis added).

Similar language appears in MAI–CR 3d, effective January 1, 1987, in the section "How to Use This Book," pages XXXVIII–XXXIX. Although I am aware of many cases to the contrary, I believe that this court has the authority to review claims of error in MAI–CR, MAI–CR 2d, and MAI–CR 3d instructions. See the dissenting opinion of Dixon, J., in *State v. Singer,* 719 S.W.2d 818, 823 (Mo.App.W.D.1986), and the concurring opinion of Maus, J., in *State v. Pendergrass,* 726 S.W.2d 831, 834 (Mo. App.S.D.1987).