**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Larry WILLIAMS,
Defendant/Appellant.**

No. 54949.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 29, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 25, 1989.

Application to Transfer Denied
Dec. 12, 1989.

Dorothy M. Hirzy, Sp. Public Defender, David C. Hemingway, St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., Daryl R. Hylton, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

SATZ, Judge.

In this court tried case, defendant, Larry Williams, was convicted of four felonies: first degree assault, § 565.050, RSMo 1986, armed criminal action, § 571.015, RSMo 1986, unlawful possession of a silencer, § 571.020.1(5), RSMo 1986 and unlawful use of a weapon, § 571.030.1(4), RSMo 1986. Defendant appeals his conviction of unlawful use of a weapon. We affirm.

Defendant was charged with "knowingly exhibiting a lethal weapon," in the presence of others, "in an angry or threatening manner." § 571.030.1(4) RSMo 1986. Defendant admits the weapon in question was a lethal weapon. He contends, however, the state failed to make a submissible case that he "knowingly" exhibited the weapon in either an "angry or threatening" manner.

To determine whether the state made a submissible case, we accept as true all evidence and permissible inferences which support the verdict, reject all contrary evidence and inferences and determine whether the evidence, so viewed, is sufficient for reasonable persons to find the defendant guilty beyond a reasonable doubt. *State v. Sanders,* 741 S.W.2d 739, 741 (Mo.App. 1987). The record shows that on March 30, between 9:30 and 10:00 a.m., defendant drove to Sportsman's Trading Post in Florissant, Mo. He entered the store and conversed with the only employee on duty, Keith Stewart, about purchasing a fishing net. Defendant left shortly thereafter, but returned about 15 minutes later. At that time, he reentered the store, approached the counter and again asked Stewart about the fishing net. Stewart walked over to get the net, reached up and then felt a blow to his head. Stewart began falling, grabbed hold of the edge of a nearby minnow tank, felt a second blow to his head,

continued to fall, but did not "remember hitting" the floor. Although Stewart did not realize it, he was also shot in the head.

Shortly thereafter, between 10:20–30 a.m., the store owner and his wife arrived at the store. When the owner got to the front door of the store, he noticed the dead bolt on the door was engaged, and he could not open the door without his key. He used his key to open the door and entered the store. He then saw Stewart "laying on the floor, face up full of blood, ... blood all around him," and gasping for breath. The owner jumped over Stewart in an effort to get to the phone to seek immediate medical help. He then noticed defendant behind the register. He also saw the barrel of a gun, with a silencer on it, pointed at him. He thought the gun had a "two, [to] three inch diameter barrel" The owner said to defendant: "Don't Shoot". For a moment, the owner just stood looking at defendant. When defendant did not shoot, the owner ran out of the store.

Defendant testified in his own behalf. He said he had a family and needed money. He decided to rob the store and had planned what he intended to do if he successfully carried out the robbery. He would use the money to go back to Arizona. From among his weapons, he chose an AR–7 assault rifle, which he called a "survival rifle." About six months prior to the robbery, he had made a silencer for this rifle.

He knew the store was in an isolated area. He went into the store the first time as "kind of a casing run". He learned that Stewart was working alone. He then left the store, and "went up by the river and thought about the situation. And went back to [his] house, got the gun, and went back and attempted to rob the store". He chose the AR–7 "because ... it looks pretty nasty. [His] intent was to scare [Stewart] and get the money, and get out...." He had no explanation, however, for loading the gun with "hollow point" bullets, if all he wanted to do was to scare Stewart. When Stewart was shot, he was not facing defendant but "was faced kind of sideways to [defendant]."

Defendant had previously been convicted of two felonies: "Climbing In and Upon a

Motor Vehicle Without the Owner's Consent" and "Uttering a Forged Instrument". He had also been convicted of a misdemeanor: "Attempted Carrying a Concealed Weapon."

■ Defendant correctly notes that proof of his culpable mental state was, in part, based on circumstantial evidence. Therefore, he contends, the facts shown must not only be consistent with each other and his guilt, they must also be inconsistent with every reasonable theory of his innocence. *State v. Pollock*, 738 S.W.2d 531, 532 (Mo.App.1987). More specifically, defendant contends the facts shown are equally consistent with the inference that "he simply turned to see the owner" while he, himself, was in a state of shock from Stewart's injuries. Thus, he contends, he did not "knowingly" point his gun at the owner; rather the pointing of the gun resulted from his reflexive, non-volitional turning toward the owner. Moreover, he contends, there was no showing of any "aggressive" action on his part and, thus, he contends, the gun could not be said to have been exhibited in either an "angry or threatening" manner. Defendant's arguments border on the frivolous.

A person acts "knowingly" when (1) "he is aware of the nature of his conduct" or of the "circumstances" in issue or (2) he is aware his conduct is practically certain to cause the results his conduct did cause. § 562.016.3 RSMo 1986. To us, the facts show defendant was aware he was pointing his gun at the owner of the store and was aware by doing so the owner would be threatened.

We are aware of the rubric cited by defendant: the circumstantial evidence here must be inconsistent with every reasonable theory of innocence. The critical word in this rubric is "reasonable". Thus, it does not require a suspension of common sense or disbelief.[1]

To us, the evidence shows defendant was no naive, neophyte, solving his problems for the first time by crime. He had two prior felony convictions and one prior misdemeanor conviction. He had financial problems. He admitted he chose to solve them by robbery. He chose for his target an isolated store. He "cased it" and found only one employee. He went home and, from among his weapons, he chose an AR–7, an assault weapon. He put a silencer on it. He chose the weapon because it looked "pretty nasty" and he wanted to "scare" Stewart. He loaded the gun, apparently, just in case Stewart would not be frightened by the sight of the gun and silencer alone.

He lulled Stewart into false security and, with no provocation, hit him twice upon his head. According to defendant, the gun "discharged", but he admitted that the "discharge" of the gun "would indicate" he pulled the trigger. The shot, it can be reasonably inferred, was to eliminate Stewart, the only witness at that time.

Up to this point, the evidence shows defendant was cool, calm and collected in carrying out his carefully laid plan to rob the store. When interrupted by the owner, defendant's prior experience and planning caused him to continue carrying out his plan in the same cool, calm and collected manner. He simply pointed the AR–7, with its silencer, at the owner "to scare" him into immobility, as he had originally planned to scare Stewart.

It is unreasonable to believe defendant was in a "state of shock" because Stewart fell as a result of the two blows defendant inflicted without provocation and because Stewart was bleeding as a result of a bullet wound caused by a bullet loaded by defendant into his gun by his own free will and choice; therefore, in turn, it is unreasonable to believe the gun was pointed at the owner because of defendant's reflexive, non-volitional action rather than by his decision to point the gun at the owner and to frighten him into immobility as he originally intended to do to Stewart.

■ Likewise, it is unreasonable to believe the pointing of the gun in these circumstances was not "threatening." Admit-

---

**1.** In his use of the rubric, defendant appears to turn the scope of review on its head, and he appears to view the record in the light most favorable to him, rather than viewing it in the light most favorable to the verdict. We do not address that issue here.

tedly, the threat does not depend on the victim's subjective perception of the danger involved. It depends on an objective view of defendant's act. *State v. Murry*, 580 S.W.2d 555, 557 (Mo.App.1979). No verbal threat is required, however. It is sufficient that the manner in which it was exhibited was threatening. *State v. Overshon*, 528 S.W.2d 142, 143 (Mo.App.1975). Without again detailing the facts, a gun pointed at the owner in the circumstances described, objectively viewed, can be nothing other than a threat. In short, defendant's contention is without merit.

As part of his direct appeal, defendant also contends his trial counsel was ineffective and, therefore, his constitutional right to counsel was violated. To establish a defense, defendant's trial counsel called two psychologists as witnesses for the purpose, defendant contends, "to cast doubt on [defendant's] mental state at the time of the offenses", and, in turn, to negate the requisite culpable mental state for the offenses. His trial counsel then called defendant as a witness, and, defendant argues, his counsel elicited testimony from defendant which tended to or did undermine the defense.

■ Ordinarily, a contention of ineffective assistance of counsel is not reviewable on direct appeal from a judgment of conviction. *State v. Potter*, 711 S.W.2d 539, 541 (Mo.App.1986). An ineffective assistance claim is best handled in a motion for post-conviction relief, *State v. Lupo*, 676 S.W.2d 30, 34 (Mo.App.1984), and must be denied if the record is not sufficiently developed to determine whether counsel was ineffective. *State v. Carr*, 687 S.W.2d 606, 611 (Mo.App.1985).

■ We have read the record here. It is not sufficiently developed to allow meaningful review of defendant's claim. The record does not reveal whether trial counsel advised defendant to testify. Moreover, forceful argument can be made that the questioning defendant complains of was a matter of trial strategy or tactics. We can only speculate about counsel's ap-

proach at trial. He has not been given a chance to explain his actions and conduct. Such an opportunity could be provided in a proceeding under Rule 29.15.

> Ineffective assistance of counsel is a serious charge to level against a lawyer and, if he is available, ... one on which he should be heard in order to judicially resolve the charge. When, on direct appeal, as here, trial counsel ... was never afforded an opportunity to be heard, it is difficult to perceive how it can be said that the record presented on appeal discloses that sufficient facts essential to a meaningful review of the issues were developed.

*State v. Linhart*, 649 S.W.2d 530, 533 (Mo.App.1983).

Defendant's second point is denied.

Judgment affirmed.[2]

SMITH, P.J., and STEPHAN, J., concur.

---

**2.** Defendant was sentenced on May 5, 1988. Therefore, his claim of ineffective assistance of counsel is cognizable under Rule 29.15 rather than former Rule 27.26. On August 21, 1989, our Supreme Court held: "claims for relief cognizable under [Rule 29.15] may not be considered for the first time on appeal." *State v. Wheat*, 775 S.W.2d 155 (Mo.1989). However, we need not decide here whether that holding has retroactive application.