**STATE of Missouri, Respondent,**

v.

**Philip M. HUCKLEBERRY, Appellant.**

**No. WD 43518.**

Missouri Court of Appeals, Western District.

Nov. 26, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1992.

Richard W. Dahms, Frost, Fisher, Pickett & Dahms, Cameron, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, C.J., FENNER, P.J., and ULRICH, J.

ULRICH, Judge.

Philip M. Huckleberry appeals his jury conviction for unlawful use of a weapon, § 571.030.1(4), RSMo 1986. He was sentenced to six months in the county jail. Mr. Huckleberry, on appeal, maintains that insufficient evidence was introduced to support his conviction, the information charging him with the crime was duplicitous and defective, the trial court committed instructional error, and the trial court committed plain error by allowing his wife to testify against him. The conviction is affirmed.

On May 29, 1989, Mr. Huckleberry and his wife argued with each other. During the course of the argument, Mr. Huckleberry prevented his wife from leaving their trailer. Mrs. Huckleberry telephoned the Caldwell County Sheriff's Department for assistance. The dispatcher's office notified Sheriff's Deputy Richey of the situation. In response to this call, Deputy Richey telephoned the Huckleberry residence.

Mrs. Huckleberry informed Deputy Richey that she wanted to leave her home, but her husband would not let her. Additionally, she told the deputy that Mr. Huckleberry had beaten her that day and that he had a gun. Deputy Richey heard a man's voice on the telephone state, "tell them I have a (expletive) shotgun, too." After speaking with Mrs. Huckleberry, Deputy Richey proceeded to the Huckleberrys' home.

Deputy Richey radioed for assistance from several other law enforcement officers. Upon arriving at the Huckleberry home, Deputy Richey and other law enforcement officers found Mr. Huckleberry sitting on a tractor blocking the driveway entrance to the property. A shotgun rested on Mr. Huckleberry's lap. His right hand was near the trigger. The officers took covered positions around Mr. Huckleberry. Deputy Richey donned a bullet proof vest, loaded his shotgun, and attempted to communicate with Mr. Huckleberry. When Deputy Richey yelled to Mr. Huckleberry to drop his shotgun, Mr. Huckleberry motioned with his right hand for the deputy to come towards him and then returned his right hand near the trigger of his shotgun. Fearing that Mr. Huckleberry may shoot his weapon at him, Deputy Richey aimed his shotgun at Mr. Huckleberry. Mr. Huckleberry again motioned for Deputy Richey to advance toward him and then again placed his right hand near the trigger of his shotgun. Mr. Huckleberry did this three times. Mr. Huckleberry's threatening actions caused

the other officers to aim their weapons at Mr. Huckleberry.

Sheriff Adkinson sneaked behind Mr. Huckleberry, wrestled him to the ground and disarmed him. The officers confiscated from Mr. Huckleberry the loaded shotgun and a loaded pistol, which was concealed behind him in his pants. Mr. Huckleberry appeared to be drunk when he was apprehended.

## I.

■ Mr. Huckleberry contends that the trial court erred in denying his motion for judgment of acquittal because, he says, insufficient evidence was introduced to prove the charge that he exhibited a shotgun in an angry or threatening manner in violation of § 571.030.1(4). Section 571.030.1(4) defines the unlawful use of a weapon as the exhibiting "in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner. . . ."

Mr. Huckleberry does not deny that as he sat on a tractor with a shotgun across his lap, several times he motioned with his right hand for Deputy Richey to proceed toward him, and then placed his right hand near the trigger of the shotgun. Mr. Huckleberry argues that this conduct was not an angry or threatening action. Mr. Huckleberry offers several cases to support this contention. *See e.g., State v. Plassard*, 355 Mo. 90, 195 S.W.2d 495 (1946); *State v. White*, 299 Mo. 599, 253 S.W. 724, 727 (1923). These cases are inapplicable. *Plassard* addressed the use of force by a homeowner against trespassers. By contrast, Mr. Huckleberry's actions threatened law enforcement officers who had authority to be present and who were not illegal trespassers. *Id.* 195 S.W.2d at 497. The court in *White* stated citizens may not bear arms in a rude, angry, or threatening manner when the citizen bearing arms is the aggressor. 253 S.W. at 727. In this case, Mr. Huckleberry was the aggressor when he exhibited a shotgun in a rude, angry, or threatening manner, and *White* does not support Mr. Huckleberry's argument. *Id.*

The record contains ample evidence proving Mr. Huckleberry exhibited a shotgun in an angry or threatening manner in the presence of one or more persons in violation of § 571.030.1(4). Deputy Richey heard Mr. Huckleberry state, in a threatening manner, in the background of the telephone call with Mrs. Huckleberry, that he had a shotgun. Deputy Richey was informed by Mrs. Huckleberry that her husband had beaten her and that he had threatened her with a shotgun. When the officers arrived at the Huckleberry residence, Mr. Huckleberry was on a tractor blocking the driveway to the residence. Mr. Huckleberry had a shotgun across his lap, with his right hand near the trigger. When Deputy Richey told the appellant to drop the weapon, Mr. Huckleberry raised his right hand, motioned for the officer to come forward, and then returned his hand to the trigger area. The appellant did this three more times. This conduct made the law enforcement officers present apprehensive and caused them to take defensive positions and to aim their weapons at Mr. Huckleberry. Mr. Huckleberry was finally seized from behind and disarmed. When the loaded shotgun was seized, a loaded pistol was also discovered on Mr. Huckleberry's person.

■ Appellate courts review a trial court's denial of a defendant's motion for judgment of acquittal by viewing the evidence, and all reasonable inferences from such evidence, in the light most favorable to the state. *State v. Jordan*, 793 S.W.2d 905, 906–07 (Mo.App.1990). Additionally, all contrary evidence and inferences are rejected. *Id.* at 907. Sufficient competent evidence was introduced to support the verdict. Mr. Huckleberry's exhibition of the shotgun, a weapon readily capable of lethal use, in an angry or threatening manner was sufficient to constitute the offense charged. *State v. Williams*, 779 S.W.2d 600, 603 (Mo.App.1989). Mr. Huckleberry's first point is denied.

## II.

■ Mr. Huckleberry states as point II that the information is fatally defective

because it is duplicitous, charging him with having committed two offenses in a single count. He contends that § 571.030.1(4), which defines the crime of unlawful use of weapons, can be committed in two different ways. He claims that the first way to violate the statute is by exhibiting in an angry manner a weapon capable of lethal use. The second method, he says, is by exhibiting a weapon capable of lethal use in a threatening manner. Mr. Huckleberry contends that the information is fatally defective because it alleges that he exhibited a shotgun in "an angry *or* threatening manner," charging him with two crimes in a single count. (Emphasis added). Duplicity is generally defined as the fault of charging two or more offenses in one count of an information or indictment. *State v. Shell*, 571 S.W.2d 798, 800 (Mo.App.1978).

Mr. Huckleberry's point (II) does not conform to the requirement of Rule 84.04(d). This point does not "'specify *wherein* and *why* the (unspecified) ruling of the trial court was erroneous ... it does not identify any specific ruling complained of and does not specify any point in the trial of the case where the trial court was asked to take such affirmative action.'" *Kolocotronis v. Ritterbusch*, 667 S.W.2d 430, 438 (Mo.App.1984) (quoting *Thummel v. King*, 570 S.W.2d 679, 684 (Mo. banc 1978)). Mr. Huckleberry fails to specify what, if any, trial court ruling was erroneous. Additionally, Mr. Huckleberry failed to preserve the issue by motion prior to trial, by objection during trial, and by post trial motion for judgment of acquittal after return of the verdict. However, the point is reviewed *ex gratia*.

In *Arellano v. State*, 779 S.W.2d 631 (Mo.App.1989), this court considered whether the information charged the defendant with committing first degree assault in alternative and mutually inconsistent ways. *Id.* at 631–32. The court noted that Supreme Court Rule 23.01(e) states: "All indictments or informations which are substantially consistent with the forms of indictments or informations which have been approved by this Court shall be deemed to comply with the requirements of this Rule 23.01(b)." Rule 23.01(b) prescribes the requirement of valid indictments and informations. The court in *Arellano* stated that an information that follows the language in the statute as well as the Missouri approved instruction relating to the offense is proper. *Id.* at 632.

In this case, the information did not charge alternative and mutually inconsistent ways of committing the crime, unlawful use of a weapon. The information charged Mr. Huckleberry with a single offense, unlawfully exhibiting a potentially lethal weapon in the presence of at least one other person. The statute defined the manner that the weapon was exhibited, "in an angry or threatening manner," as an element of the offense. § 571.030.1(4). The information follows the statutory language in § 571.030.1(4) and MAI–CR 3rd 331.22. The use of the disjunctive is not fatally defective. *Id.* However, even if the single count had been duplicitous, the jury verdict cured the defect. *State v. Hamell*, 561 S.W.2d 357, 365 (Mo.App. 1977). Point II is denied.

### III.

■ Mr. Huckleberry contends as his third point that the trial court erroneously submitted instruction No. 5, alleging that the instruction contains two separate charges. Mr. Huckleberry argues that Instruction No. 5 charges him with either exhibiting a shotgun in an angry manner, one charge, or exhibiting the shotgun in a threatening manner, a second charge. Instruction No. 5 relates to § 571.030.1(4) and states in part:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about May 29, 1989, in the County of Caldwell, State of Missouri, the defendant exhibited in the presence of one or more persons a double barrel shotgun, and

Second, that he did so in an angry or threatening manner....

Mr. Huckleberry claims that because the language "angry *or* threatening" in paragraph "second" constitutes submission of two separate offenses, the jury verdict

does not permit determination of whether the twelve jurors concluded that Mr. Huckleberry committed any one of the particular offenses.

Instruction No. 5 mirrors MAI–CR 3d 331.22 "and is therefore presumptively correct." *State v. Franklin*, 752 S.W.2d 937, 939 (Mo.App.1988) (citing Rule 28.02(c)). "The MAI–CR 3d approved instructions are mandatory. This court is prohibited from declaring that the instruction adopted by the Supreme Court is erroneous." *Id.* Mr. Huckleberry's third point is denied.

### IV.

■ Mr. Huckleberry argues for his final point on appeal that the trial court committed plain error by allowing his wife to testify against her husband. Mr. Huckleberry concedes that he did not preserve this question for review by timely objecting at trial and by including the issue in his motion for judgment of acquittal after the verdict. Mr. Huckleberry requests this court to utilize Rule 30.20 and review this issue as plain error. Mr. Huckleberry asserts that allowing his wife to testify against him is manifestly unjust and is a miscarriage of justice.

Rule 30.20 specifies that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The plain error doctrine is invoked sparingly and applies only in those cases " 'where there is a strong, clear showing of manifest injustice or a miscarriage of justice.' " *State v. Loewe*, 756 S.W.2d 177, 180 (Mo.App.1988) (quoting *State v. Hubbard*, 659 S.W.2d 551, 555–56 (Mo.App.1983)).

The evidence of Mr. Huckleberry's guilt is overwhelming. In addition to his wife's testimony, five law enforcement officers testified about the threatening manner in which Mr. Huckleberry exhibited the shotgun. "If guilt is established by overwhelming evidence, then there is no injustice in refusing to invoke the rule." *Loewe*, 756 S.W.2d at 180. Manifest injustice will not result if the plain error rule is not invoked in this case because the evidence of Mr. Huckleberry's guilt is overwhelming. *State v. Vaughn*, 736 S.W.2d 437, 438 (Mo.App.1987). Additionally, § 546.260 provides that a spouse who wants to testify as a witness for the prosecution against the marital partner is not precluded from testifying because of the marital relationship. *State v. DeWeese*, 751 S.W.2d 389, 391 (Mo.App.1988). Appellant's final point is denied. The judgment is affirmed.

All concur.